# No. 22-14191

---

In The

# United States Court of Appeals for the Eleventh Circuit

---

## ANDREA THOMAS, et al.,

on behalf of herself and all others similarly situated,
Plaintiffs-Appellants

v.

## JSTC, LLC, et al.,

Defendants-Appellees

---

ON PARTIAL APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
District Court Case No.: 6:19-cv-01528-RBD-DAB

---

### PLAINTIFFS-APPELLANTS' OPENING BRIEF

---

**VARNELL & WARWICK, P.A.**
Janet Varnell, FBN: 0071072
1101 E. Cumberland Ave., Ste. 201H, #105
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
jvarnell@vandwlaw.com

*Attorneys for Plaintiffs and the FLSA Collective*

**LICHTEN & LISS-RIORDAN, P.C.**
Sarah R. Schalman-Bergen
Krysten Connon
729 Boylston St, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
ssb@llrlaw.com
kconnon@llrlaw.com

**WILLIG, WILLIAMS & DAVIDSON**
Ryan Hancock
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
rhancock@wwdlaw.com

**BERGER MONTAGUE P.C.**
Michaela L. Wallin
1818 Market Street, Suite 3600
Philadelphia, PA 19103
mwallin@bm.net

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26(b) and Eleventh Circuit Rule 26.1, Appellants hereby disclose the following list of known persons, associated persons, firms, partnerships or corporations that have a financial interest in the outcome of this case, including all subsidiaries, conglomerates, affiliates, parent corporations, and other identifiable legal entities related to a party in this case:

• AG Plus Express LLC

• Amazon.com, Inc. (NASDAQ: AMZN)

• Amazon.com Services LLC (formerly known as Amazon.com Services Inc.)

• Amazon Logistics, Inc.

• Berger Montague PC (Law firm representing Appellants)

• Bernstein, Max (Attorney representing Amazon Logistics, Inc., Amazon.com Services Inc., and Amazon.com LLC)

• COEI LLC

• Commercial Express, Inc.

• Connon, Krysten (Attorney for Appellants)

• Dalton, Roy (United States District Court Judge)

• Drop a Box, Inc.

• Fowler, Jennifer (Attorney representing Drop a Box, Inc, AG Plus Express LLC, COEI LLC, and Commercial Express, Inc)

• Hancock, Ryan (Attorney for Appellants)

- JSTC LLC

- Lichten & Liss-Riordan PC (Law firm representing Appellants)

- Morgan Lewis & Bockius LLP (Law firm representing Amazon Logistics, Inc., Amazon.com Services Inc., and Amazon.com LLC)

- Peterson, Matthew (Attorney representing Appellants)

- Ramsey, Christopher (Attorney representing Amazon Logistics, Inc., Amazon.com Services Inc., and Amazon.com LLC)

- Schalman-Bergen, Sarah (Attorney for Appellants)

- Schuster, Stephanie (Attorney representing Amazon Logistics, Inc., Amazon.com Services Inc., and Amazon.com LLC)

- Spears, Shonnika (Appellant)

- Sutherland, Paul (Attorney representing JSTC LLC)

- Tinson, DeAndre (Appellant)

- Thomas, Andrea (Appellant)

- Varnell & Warwick, PA (Law firm representing Appellants)

- Varnell, Janet (Attorney for Appellants)

- Wallin, Michaela (Attorney for Appellants)

- Warwick, Brian (Attorney for Appellants)

- Williams, Parker, Harrison, Dietz & Getzen (Law firm representing Drop a Box, Inc, AG Plus Express LLC, COEI LLC, and Commercial Express, Inc.)

- Willis, Erika (Attorney representing Appellants)

- Willig Williams & Davidson (Law firm representing Appellants)

- Wilson McCoy, PA (Law firm representing JSTC LLC)

iii

• Zelek, Mark (Attorney representing Amazon Logistics, Inc., Amazon.com Services Inc.)

Dated: May 19, 2023                    **LICHTEN & LISS-RIORDAN, P.C.**

**By: /s/ Krysten Connon**
Sarah R. Schalman-Bergen
Krysten Connon
729 Boylston St, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
ssb@llrlaw.com
kconnon@llrlaw.com

**VARNELL & WARWICK, P.A.**
JANET R. VARNELL, FBN: 0071072
1101 E. Cumberland Ave., Ste. 201H, #105
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*jvarnell@vandwlaw.com*

**WILLIG, WILLIAMS & DAVIDSON**
Ryan Hancock
rhancock@wwdlaw.com
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103

**BERGER MONTAGUE P.C.**
Michaela L. Wallin
mwallin@bm.net
1818 Market Street, Suite 3600
Philadelphia, PA 19103

*Attorneys for Appellants*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellants respectfully submit that oral argument is necessary to the just resolution of this appeal and will enhance the Court's decision-making process.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ......................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ................................ v

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION ........................................................................1

STATEMENT OF THE ISSUES..............................................................2

INTRODUCTION ...................................................................................3

STATEMENT OF THE CASE..................................................................7

     I.     PROCEDURAL HISTORY AND STATEMENT OF
          FACTS.............................................................................7

          A.     The Parties' FLSA Settlement And Separately-
                  Negotiated General Release Agreements ...................7

          B.     The Court's Approval Of The FLSA Settlement As
                  Fair And Reasonable..................................................10

          C.     The District Court's Voiding Of The General Release
                  Agreements .................................................................15

     II.    STANDARD OF REVIEW .................................................18

SUMMARY OF THE ARGUMENT .......................................................20

ARGUMENT ........................................................................................24

     I.     The District Court Erred In Voiding The General Release
          Agreements After Determining That The Settlement Was A
          Fair And Reasonable Resolution Of A *Bona Fide* Dispute ................24

          A.     The District Court Was Without Authority To Void
                  The General Release Agreements...............................25

B.     The District Court Further Erred By Imposing An Erroneous Legal Standard ........................................................... 34

C.     The Court's Decision Runs Afoul Of Prior Decisional Authority That The Parties Relied On In Negotiating The General Release Agreements .............................................. 40

II.     The District Court Erred In Voiding The General Release Agreements For The Additional Reason That The Agreements Do Not Implicate *Johnson v. NPAS* ............................... 43

A.     *NPAS* Concerned Incentive Payments Made From A Common Settlement Fund In A Non-FLSA Matter ................ 44

B.     *NPAS* Is Plainly Inapplicable To The General Release Agreements ................................................................................. 47

1.     The General Release Agreements Are Separate Contracts Supported By Separate Consideration Not Drawn From The Settlement Fund ............................................................. 48

2.     *NPAS* Did Not Involve An FLSA Settlement And The General Releases Could Not Have Been Provided In The FLSA Settlement ....................... 52

CONCLUSION ..................................................................................... 55

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ........................................................................... 56

CERTIFICATE OF SERVICE ................................................................. 57

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alcantara v. Duran Landscaping, Inc.*,
  No. 2:21-cv-03947-JDW, 2022 WL 2703610 (E.D. Pa. Jul. 12,
  2022) ....................................................................................... 25, 29

*Bell v. James C. Hall, Inc.*,
  2016 WL 5339706 (M.D. Fla. Aug. 16, 2016).............................................42

*Bolger v. Amazon.com, LLC*,
  53 Cal. App. 5th 431 (2020) ...........................................................36

*Bonetti v. Embarq Mgmt. Co.*,
  715 F. Supp. 2d 1222 (M.D. Fla. 2009) .........................................26

*Bright v. Mental Health Resource Center, Inc.*,
  2012 WL 868804 (M.D. Fla. Mar. 14, 2012)...................................9

*Broughton v. Payroll Made Easy, Inc.*,
  2021 WL 3169135 (M.D. Fla. Jul. 27, 2021)........................................ 43, 47

*Buntin v. Square Foot Mgmt. Co., LLC*,
  2015 WL 3407866 (M.D. Fla. May 27, 2015) ..............................................42

*Calderone v. Scott*,
  838 F.3d 1101 (11th Cir. 2016) .....................................................53

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) .......................................................46

*Central Railroad & Banking Co. v. Pettus*,
  113 U.S. 116, 5 S. Ct. 387, 28 L. Ed. 915 (1885) ................................. passim

*Dozier v. DBI Servs., LLC*,
  2021 WL 6061742 (M.D. Fla. Dec. 22, 2021) .................................. 40, 43, 47

*Ernie Haire Ford, Inc. v. Ford Motor Co.*,
  260 F.3d 1285 (11th Cir. 2001) .....................................................28

*Faught v. Am. Home Shield Corp.*,
668 F.3d 1233 (11th Cir. 2011) ....................................................31

*Garcia* v. *Amazon.com, Inc., et al*,
2023 WL 3190957 (M.D. Fla. May 1, 2023) .................................40

*Genesis Healthcare Corp. v. Symczyk*,
568 U.S. 66, 133 S. Ct. 1523 (2013) .............................................53

*Goodson v. OS Rest. Services, LLC*,
2018 WL 1701985 (M.D. Fla. Mar. 21, 2018)...............................42

*Gupta v. McGahey*,
709 F.3d 1062 (11th Cir. 2013) ....................................................18

*Hoyt v. Amazon.com, Inc.*,
No. 19-cv-218, 2019 WL 1411222 (N.D. Cal. Mar. 28, 2019)....................36

*Huff v. Bobcat N. Am., LLC*,
2021 WL 268356 (M.D. Fla. Jan. 25, 2021) ................................ 9, 10, 39, 41

*Johnson v. NPAS Solutions, LLC*,
975 F.3d 1244 (11th Cir. 2020) ............................................. passim

* *Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) ............................................. passim

*Marriott Corp. v. Dasta Construction Co.*,
26 F.3d 1057 (11th Cir. 1994) ......................................................28

*Martin v. Spring Break '83 Prods., L.L.C.*,
688 F.3d 247 (5th Cir. 2012) ........................................................25

*Martinez v. Ambi Paving, LLC*,
2018 WL 5003754 (M.D. Fla. Oct. 11, 2018)...............................42

*Mirage Resorts, Inc. v. Quiet Nacelle Corp.*,
206 F.3d 1398 (11th Cir. 2000) ....................................................33

*Nall v. Mal-Motels, Inc.*,
723 F.3d 1304 (11th Cir. 2013) ....................................................25

ix

*O'Neill v. Speedster Services, LLC*,
   2018 WL 4956775 (M.D. Fla. Sept. 11, 2018) ............................................42

*Padilla v. Smith*,
   53 F.4th 1303 (11th Cir. 2022) ....................................................................27

*Paylor v. Hartford Fire Ins. Co.*,
   748 F.3d 1117 (11th Cir. 2014) ....................................................................32

*Pecznick v. Amazon.com, Inc.*,
   No. 2:22-cv-00743, 2022 WL 4483123 (W.D. Wash. Sept. 27,
   2022) ..............................................................................................................36

*Resnick v. Uccello Immobilien GMBH, Inc.*,
   227 F.3d 1347 (11th Cir. 2000) ....................................................................28

*Rodrigues v. CNP of Sanctuary, LLC*,
   523 F. App'x. 628 (11th Cir. 2013) ................................................... 29, 30, 31

*Roman v. FSC Clearwater, LLC*,
   2017 WL 1552304 (M.D. Fla. May 1, 2017) ................................................42

*Scofield v. Davant*,
   218 F.2d 486 (5th Cir. 1955) ........................................................................39

*Sibauste v. Forge Motor Sport, Inc.*,
   Case No: 6:17-cv-2069-Orl-DCI, Dkt. No. 32 (M.D. Fla. May 17,
   2018) ..............................................................................................................42

*Trustees v. Greenough*,
   105 U.S. 527, 26 L. Ed. 1157 (1882) ................................................... passim

*United Egg Producers v. Standard Brands, Inc.*,
   44 F.3d 940 (11th Cir. 1995) ........................................................................18

*United States v. Noriega*,
   917 F.2d 1543 (11th Cir. 1990) ....................................................................38

*Vance v. Amazon.com Inc.*,
   525 F. Supp. 3d 1301 (W.D. Wash. 2021) ....................................................36

x

*Vela v. Sunnygrove Landscape & Irrigation Maint., LLC,*
    2018 WL 8576382 (M.D. Fla. Oct. 4, 2018)..................................................42

*Wiand for Valhalla Investment Partners, L.P. v. Rowe*,
    2014 WL 12691590 (M.D. Fla. Jul. 11, 2014).............................................28

**Statutes**

28 U.S.C. § 1291 ..............................................................................................1

28 U.S.C. § 1331 ..............................................................................................1

29 U.S.C. 216(b) ..............................................................................................1

Fair Labor Standards Act ("FLSA"),
    29 U.S.C. § 201, *et seq.* ...................................................................... passim

Telephone Consumer Protection Act,
    47 U.S.C. § 227...........................................................................................52

**Other Authorities**

29 Williston on Contracts § 73:11 (4th ed.)..................................................35

29 Williston on Contracts § 73:4 (4th ed.)....................................................35

5 Williston on Contracts § 12:3 (4th ed.)......................................................28

**Rules**

11th Circuit R. 28-5 .........................................................................................8

11th Circuit Rule 36-2 ....................................................................................30

Fed. R. App. P. 3(c)(6)......................................................................................1

Fed. R. Civ. P. 23 ...................................................................................... passim

## <u>STATEMENT OF SUBJECT MATTER AND</u><br><u>APPELLATE JURISDICTION</u>

The District Court had subject matter jurisdiction over the underlying Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. 216(b).

This Court has appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, as the District Court entered its final decision "grant[ing] in part and deny[ing]" in part Plaintiffs' Unopposed Motion For Final Approval Of The Fair Labor Standards Act Settlement Agreement and directing the Clerk to close the case on November 18, 2022 (Order, D.E. 123). Plaintiffs timely filed a Notice of Partial Appeal on December 16, 2022, limited only to the part of the Court's Order that did "not . . .permit the proposed $10,000 payments to Named Plaintiffs," pursuant to Fed. R. App. P. 3(c)(6). (D.E. 125).

## STATEMENT OF THE ISSUES

Did the District Court err in voiding separately negotiated general release agreements between private parties after determining that those agreements did not impact or otherwise affect the fair and reasonable resolution of a *bona fide* dispute in connection with a collective action settlement under the Fair Labor Standards Act?

## **INTRODUCTION**

This is an appeal without appellees. *See* Dkt. Nos. 21, 22. The District Court in this case overstepped its authority and voided private contracts entered into by the Parties. In doing so, the District Court exceeded its prescribed role and employed an erroneous analysis. Plaintiffs-Appellants have accordingly brought the instant appeal, respectfully asking this Court to reverse the District Court's overreach.

By way of background, the underlying matter before the District Court involved a collective action brought by Plaintiffs under the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA") for Defendants' alleged failure to pay overtime compensation to delivery drivers who delivered packages to Amazon.com customers. After substantial discovery, and in the course of three mediation sessions overseen by an experienced mediator, the Parties negotiated a common fund settlement for the collective and the concomitant release of the disputed FLSA claims in the lawsuit. Separate from those negotiations, Defendants sought to negotiate general releases from each of the Named Plaintiffs, a common desire of employers for a variety of purposes, and one that cannot be obtained for the same consideration as provided to the employee in exchange for a release of claims under the FLSA.

The Parties were all represented by competent counsel in an adversarial context. The Defendants, including Amazon, one of the largest corporations in the

world, negotiated a general release of known and unknown claims between them and the Named Plaintiffs. In exchange for the general releases, the Parties reached a negotiated compromise, supported by separate consideration to each of the Named Plaintiffs in the amount of $10,000. This consideration was not part of the common fund to be paid to the collective, and did not impact or otherwise affect the amounts that were payable to the members of the collective in exchange for the release of their FLSA claims. Nor did the separately negotiated general release agreements contain any terms that would impermissibly frustrate the purposes of the FLSA or thwart the legislative policies it was designed to effectuate, such as non-disparagement, confidentiality, or no re-hire clauses.

Companies obtain general releases from people all the time in a myriad of contexts that do not require court approval.  And here, Plaintiffs disclosed the general release agreements to the District Court in connection with seeking approval of the Parties' FLSA Settlement in the interest of full transparency, and so that the District Court could consider the general release agreements in connection with its review of the Parties' FLSA Settlement, as dictated by *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). Plaintiffs did not seek the District Court's approval for these separately-negotiated general release agreements.

Notably, the District Court's authority for its review of FLSA collective action settlements is derived solely from the statutory provisions of the FLSA, as

interpreted by *Lynn's Food* and its progeny, whose purpose was to provide oversight over the inherently "great inequalities in bargaining power between employers and employees" and to prevent "the many harms" and "invidious practices" that may negatively impact *employees* when employers are allowed to "'bargain' with their employees over minimum wages and overtime compensation." *See Lynn's Food*, 679 F.2d at 1352, 1354-55.

The general release agreements supported by separate and independent consideration and negotiated by parties represented by counsel in an adversarial context do not implicate the concerns identified in *Lynn's Food*. And the District Court properly discharged its role in reviewing the FLSA collective action settlement and finding that the settlement represented a fair and reasonable resolution of a *bona fide* dispute and contained no terms that would frustrate the purpose of the FLSA.

But having properly discharged its duty under *Lynn's Food*, the District Court erred by then reaching beyond the Parties' FLSA Settlement for the collective and voiding the Parties' separately-negotiated release contracts that are supported by separate consideration and not paid from the common FLSA settlement fund. At no time did the District Court determine that the contracts affected the fairness or reasonableness of the FLSA settlement. Rather, in voiding the agreements, the District Court cast aside the contracting parties' judgment and determined that the

bargained-for release contracts were actually incentive payments prohibited by *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020). They are not, and the District Court exceeded its authority in so holding.

*NPAS* is wholly inapplicable to the Parties' general release contracts. *NPAS* was decided solely based on prior Supreme Court precedent involving payments made from a common fund expressly for services rendered, which is not at issue here. Indeed, the settlement to the collective has already been effectuated and distributed to members of the collective. By contrast, the valid consideration agreed to by the parties in exchange for valid releases of claims is currently being held in the District Court's Registry pending this appeal. If this Court upholds the District Court's ruling, it will be voiding private contracts that do not in any way impact the settlement collective members, in express derogation of the will of the private parties here, who are otherwise entitled to receive the benefit of their bargain (and whose agreement would not be subject to judicial review in nearly any other context). Respectfully, the District Court's decision to void these general release contracts represents judicial overreach and should be reversed.

## STATEMENT OF THE CASE

## I.    PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A.    The Parties' FLSA Settlement And Separately-Negotiated General Release Agreements

Plaintiffs Andrea Thomas, DeAndre Tinson, and Shonnika Spears brought this matter in the United States District Court for the Middle District of Florida, alleging that Defendants Amazon.com Services, Inc., Amazon Logistics, Inc. Amazon.com LLC, JSTC LLC, Commercial Express, Inc., COEI, LLC, AG Plus Express, LLC, and Drop A Box, Inc., maintained an unlawful policy and practice of failing to pay overtime compensation to delivery drivers who were paid on a day rate basis to deliver packages to Amazon.com customers, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA"). (*See generally* Consolidated Amended Collective Action Complaint, D.E. 87).

The Parties engaged in numerous efforts to resolve this lawsuit, including several in-person and videoconference mediation sessions with court-approved mediators. (D.E. 25, 49, 75, 77, 97; D.E. 101-1, ¶¶ 14-16; Settlement Agreement, D.E. 101-2, ¶¶ 4-5). The Parties engaged in substantial discovery and exchange of information in connection with the litigation of the case and their settlement efforts. (D.E. 101-1, ¶ 17; Settlement Agreement, D.E. 101-2, ¶¶ 6-8). As a result of these mediation sessions and continued arm's length negotiations, and after thorough investigation and analysis of the facts and law related to the claims, the Parties

ultimately agreed to settle Plaintiffs' FLSA claims on a collective basis.[1] (D.E. 101-1, ¶¶ 17-18; D.E. 97).

In negotiating the settlement of the claims, the Parties separately negotiated the wage settlement amount for the collective ($955,700) and attorneys' fees and costs (fees totaling $490,000, and costs totaling $24,300). (FLSA Settlement Agreement, D.E. 101-02, ¶7; Transcript[2] at 27:1-4). The Parties also separately negotiated that Defendants would pay settlement administration costs (not to exceed $19,000) in addition to the wage settlement amount. (FLSA Settlement Agreement, D.E. 101-02, ¶11(q); Transcript at 27:5-12). Further, the Parties also separately negotiated that Defendants would pay the employers' share of payroll taxes in addition to the wage settlement amount (which totaled $76,128). (FLSA Settlement Agreement, D.E. 101-02, ¶11(t); Transcript at 27:13-19).

Additionally, Defendants sought to obtain general releases from the three Named Plaintiffs. (Transcript at 22:3-7, 23:20-24). Because courts generally do not permit individuals to provide general releases for the same consideration that they

---

[1]    The Parties reached a settlement on behalf of "Plaintiffs and all current and former DAs who were paid by Commercial Express, COEI, LLC, or any one of its subcontractors, including AG Plus Express, LLC, JSTC, LLC, and/or Drop a Box, Inc. to deliver packages to customers of Amazon in the United States between March 1, 2017 and June 22, 2019." (FLSA Settlement Agreement, D.E. 101-02, ¶11(s)).

[2]    Transcript citations reflect the page number that appears in the header generated by the district court's electronic filing system. 11th Circuit R. 28-5.

receive for settling their FLSA claims[3], the Parties separately negotiated release agreements for non-FLSA claims, in exchange for additional consideration in the amount of $10,000 for each Named Plaintiff ("General Release Agreements"). (D.E. 101-4). In negotiating the General Release Agreements, the Parties relied on a prior decision of the District Court and cases within the Middle District of Florida. (D.E. 101-4; Preliminary Approval Motion, D.E. 102 (citing *Huff v. Bobcat N. Am., LLC*, 2021 WL 268356, at *4 (M.D. Fla. Jan. 25, 2021) (approving general release in the amount of $10,000 and explaining that "[w]hile general releases are generally disfavored in FLSA actions, courts have found that parties may enter into a general release for separate consideration" and recommending that the Court "not pass on the validity of the separate release, but instead find that it does not affect the fairness of the FLSA settlement in this action as set forth in the Agreement"), *report and recommendation adopted*, 2021 WL 268355 (M.D. Fla. Jan. 27, 2021) (Dalton, J.)).

The General Release Agreements provide payments of $10,000.00 each to the Named Plaintiffs, in exchange for a general release of all known and unknown claims against Defendants extending to the date of execution of the Agreements.

---

[3]    *See, e.g., Huff v. Bobcat N. Am., LLC*, 2021 WL 268356, at *4 (M.D. Fla. Jan. 25, 2021) ("general releases are generally disfavored in FLSA actions"), *report and recommendation adopted*, 2021 WL 268355 (M.D. Fla. Jan. 27, 2021) (Dalton, J.); *Bright v. Mental Health Resource Center, Inc.*, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012) (Dalton, J.) ("[p]ervasive, overly broad [general] releases have no place in settlements of most FLSA claims.").

(D.E. 101-4). These amounts were separately negotiated, do not impact or reduce the amounts paid to the FLSA Settlement Collective Members, and are supported by separate and independent consideration not otherwise available in an FLSA settlement (such that were the Court to affirm the District Court's voiding of these agreements, the monies will be paid back to Defendants from the Court's Registry and Defendants will keep the money not get their bargained-for releases). (*Id.*).

## B.    The Court's Approval Of The FLSA Settlement As Fair And Reasonable

On December 17, 2021, Plaintiffs filed their Unopposed Motion for Preliminary Approval of the Fair Labor Standards Act Collective Action Settlement Agreement ("Preliminary Approval Motion"), wherein they sought the Court's approval of the FLSA Settlement as a fair and reasonable resolution of a *bona fide* dispute under *Lynn's Food* and asked the Court to approve the issuance of notice of the FLSA Settlement. (D.E. 101). In the interest of transparency, Plaintiffs attached the General Release Agreements as exhibits to their Preliminary Approval Motion. (D.E. 101-4). Plaintiffs explained in their Preliminary Approval Motion that they did not seek the District Court's approval of the General Release Agreements, and also explained that the General Release Agreements did not affect the fairness of the FLSA Settlement Agreement. (D.E. 102, at 10). In doing so, Plaintiffs directed the District Court to its own prior decision in *Huff v. Bobcat N. Am., LLC*, as well as other decisions from within the Middle District of Florida, that permitted settling

10

parties to enter into separate general release contracts supported by separate consideration, and upon which the parties relied in negotiating the General Release Agreements. (D.E. 102, at 10-11 (collecting cases)).

On March 9, 2022, the Magistrate Judge issued a Report and Recommendation ("R&R"), recommending that the Court grant, in most part, the Plaintiffs' Preliminary Approval Motion. (D.E. 110). Specifically, the Magistrate Judge found that the FLSA settlement reached was a fair and reasonable resolution of a *bona fide* dispute, explaining that "[t]his case involves disputed issues of liability under the FLSA, which constitutes a *bona fide* dispute." (D.E. 110, at 12). The Magistrate Judge further found that the Settlement was fair and reasonable, pointing to the background of this case as well as providing a detailed overview of the proposed settlement procedures. (D.E. 110, at 8-14). The Magistrate Judge explained that the "case involves disputed issues regarding FLSA liability," and, "[m]indful of the uncertainty associated with continued litigation, the parties decided to amicably resolve their dispute." (D.E. 110, at 13). The Magistrate Judge continued: "[t]he parties were represented by experienced counsel during the settlement negotiations, which included three full-day mediations" and "[f]inally, the terms of the Agreement were the result of negotiations without any coercion, collusion or undue influence" and "[a]fter receiving sufficient information to make informed decisions, the parties decided to settle their dispute." (D.E. 110, at 13-14).

The Magistrate Judge concluded: "[c]onsidering the foregoing, and the strong presumption favoring settlement, the settlement amount is fair and reasonable." (D.E. 110, at 14).[4]

Separate from the Court's consideration of the fairness and reasonableness of the FLSA Settlement, the Magistrate Judge also recommended that the Court "reject" the separately-negotiated General Release Agreements as "prohibited incentive awards" under *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020). (D.E. 110, at 22-24). Alternatively, because of the then-pending petition for rehearing *en banc* in *NPAS* and "in consideration of the extensive professional efforts devoted by counsel here and the legitimate expectations of the parties," the Magistrate Judge suggested that the District Court "may wish to defer ruling on the validity of the payments made under the general releases until *Johnson* is more settled." (*Id.*). Notably, the Magistrate Judge did not find that the General Release Agreement in any way affected the fairness or reasonableness of the FLSA Settlement. (*See generally id.*).[5]

---

[4]    The Magistrate Judge also raised concerns with two provisions of the FLSA Settlement that were later amended and are not relevant to the instant appeal – namely, certain modification and jurisdiction provisions. (D.E. 110; D.E. 118-2).

[5]    Prior to issuing the R&R, on January 20, 2022, the Magistrate Judge directed the parties file "memoranda . . . addressing the applicability of *Johnson v. NPAS Solutions*, 975 F.3d 1244 (11 Cir. 2020) (petition for review *en banc* pending) to the proposed settlement of this case, particularly with respect to the consideration for the named plaintiffs associated with the general releases." (D.E. 104).

The Parties each filed partial objections to the R&R, limited only to the

Magistrate Judge's recommendations with regard to the General Release

Agreements, stressing that the Agreements were separately-negotiated private

agreements between parties supported by separate consideration, and which do not

impact the FLSA settlement, and, as such, the *NPAS* matter has no bearing on those

agreements. (D.E. 111; D.E. 112).

On April 28, 2022, the District Court adopted in most part the Magistrate

Judge's "thorough and well-reasoned" R&R, recommending that the Settlement be

approved as fair and reasonable. (D.E. 113). The District Court adopted the R&R,

certified the collective, and declined to adopt only the "narrow" aspect of the R&R

---

On January 25, 2022, the Parties submitted a Joint Supplemental Brief In
Support of Plaintiffs' Unopposed Motion For Preliminary Approval of the Fair
Labor Standards Act Collective Action Settlement Agreement. (D.E. 107). The
Parties explained that while the *NPAS* decision prohibited certain "incentive awards"
drawn from a common settlement fund, *NPAS* is inapplicable here, as *NPAS* did not
concern general release contracts supported by separate consideration, nor did it
concern the FLSA. (*Id.*) And here, Defendants sought to obtain a general release
from the Named Plaintiffs, which are not obtainable in an FLSA collective action
settlement because of the unique features and policy considerations underlying the
FLSA. (*Id.*) As such, and specifically relying on prior decisions, the Parties
separately negotiated the General Release Agreements supported by separate
consideration. (*Id.*) The Parties submitted that the General Release Agreements are
private agreements between parties and do not impact the fairness of the FLSA
Settlement Agreement. (*Id.*).

Additionally, on January 27, 2022, the Magistrate Judge held a telephone
hearing regarding the Preliminary Approval Motion, wherein he identified
typographical errors in the Notice of Settlement Award Check, attached as Exhibit
B to the FLSA Settlement Agreement. (D.E. 108; D.E. 109). The Parties corrected
these errors and submitted a revised Exhibit. (*Id.*).

concerning the General Release Agreements, agreeing instead with the Magistrate Judge's alternative suggestion to defer ruling on the "validity" of the General Release Agreements until *NPAS* is "more settled." (D.E. 113, at 6).[6] In doing so, the District Court directed that the consideration to be paid under the General Release Agreements be deposited into "the registry of the Court pending the Court's final determination." (D.E. 113, at 7).

Following the District Court's grant of preliminary approval to the Settlement Agreement, the Settlement Administrator disseminated the Notice of Settlement to the Settlement Collective Members.[7] (D.E. 118-1).

On September 15, 2022, Plaintiffs filed their Unopposed Motion for Final Approval of The Fair Labor Standards Act Settlement Agreement ("Final Approval Motion"). (D.E. 118). The District Court held oral argument on Plaintiffs' Final

---

[6]    As noted *supra*, fn. 4, the Court also directed that the parties amend the modification and jurisdiction provisions of the FLSA Settlement, which the Parties did. (D.E. 118-2).

[7]    Because this is an FLSA collective action settlement and not a Rule 23 settlement, there was no objection and no request to exclude process; no Settlement Collective Member is bound by this Agreement – they only release their claims if they choose to cash their settlement check and accept the compensation offered. *See* (D.E. No. 101-2, at ¶ 11(m); Ex. B).

The Notice advised Settlement Collective Members that they would automatically receive a settlement check if the Court grants final approval of the Settlement Agreement and that they could submit a dispute regarding Defendants' records of the number of weeks they worked by September 3, 2022, and it also provided an estimated individual settlement amount. (D.E. 118, at 6).

Approval Motion on October 11, 2022. (D.E. 122). During the oral argument, the District Court again expressed its intent to give final approval to the settlement "in all respects as recommended by [Magistrate] Judge Baker, save my concern about the propriety of the $10,000 fee that has been negotiated with respect to the representative plaintiffs." (Transcript at 5:21-24). The District Court heard argument only on the General Release Agreements, and reiterated its prior finding that the FLSA Settlement is fair and reasonable:

> For the record, I do find that Judge Baker's report and recommendation appropriately categorizes the settlement and that it's fair and reasonable in every respect to the extent that there's no fraud or collusion behind the settlement.
>
> I agree with [him] that the complexity, expense, and duration of the litigation, the stage of the proceedings, where we are with respect to discovery, probability of plaintiffs' success on the merits, range of possible recovery, opinions of class counsel all militate in favor of approval of the settlement.

(Transcript 24:2-12). The court advised the Parties that it would "make a decision about the propriety of the payment, $10,000 payment, to the representative plaintiffs." (Transcript 24:13-15).

### C.    The District Court's Voiding Of The General Release Agreements

On November 18, 2022, the District Court issued an Order, wherein it "granted in part and denied in part" Plaintiffs' Motion for Final Approval ("Order"). (Order, D.E. 123). The District Court reiterated that the Magistrate Judge "submitted that the Agreement is a fair and reasonable resolution of a *bona fide* dispute" and

"found the Agreement fair and reasonable after considering that the parties were represented by experienced counsel; negotiations were not the result of coercion, collusion, or undue influence; and the parties were sufficiently informed in their decision making. (Order, D.E. 123 at 3 (citations omitted)). Critically, the District Court explained that the "***only issues***" the Magistrate Judge "noted were the provisions allowing the parties to modify the Agreement without Court approval and requesting that the Court retain jurisdiction." (*Id.* (emphasis added)). The District Court reiterated that it had previously "adopted Judge Baker's recommendations on fairness, preliminarily approved the Agreement, and directed the parties to amend the Agreement based on the recommendations in the R&R" and explained that "[t]he parties have since removed these provisions, so the Court grants final approval of the Agreement." (D.E. 123, at 3-4).

After reaffirming its prior finding that the FLSA Settlement was fair and reasonable under *Lynn's Food*, the District Court proceeded to void the General Release Agreements, finding that the "payments are 'incentive payments' prohibited by *Johnson* [*v. NPAS*]." (Order, D.E. 123, at 6). Notably, the District Court did not find that the General Release Agreements in any way affected the fairness or reasonableness of the FLSA Settlement, yet it voided them. (*See generally id.*) Indeed, the Court "denied" Plaintiffs' Motion with respect to the General Release Agreements, stating it "will not . . . permit the proposed $10,000 payments to Named

16

Plaintiffs." (Order, D.E. 123, at 9). In doing so, and as explained herein, Plaintiffs submit that the Court overstepped its authority and reviewed the General Release Agreements against an erroneous standard and substituted its judgment for that of the Parties with respect to the value of the releases. In its Order, the District Court also directed the Clerk to close the case. (Order, D.E. 123, at 9).

Plaintiffs timely filed the instant partial appeal of the District Court's Order, limited solely to the part of the Order that did "not . . . permit the proposed $10,000 payments to Named Plaintiffs." (D.E. 125). Following Plaintiffs' filing of the Notice of Partial Appeal, the Court issued an Order directing that the $30,000 consideration "that is the subject of the appeal will remain in the registry of the Court until such time that the appeal is concluded." (D.E. 127).

Additionally, given the Court's approval of the Parties' FLSA Settlement, the Settlement has been distributed to Settlement Collective Members according to the terms of the FLSA Settlement Agreement.

## II.    STANDARD OF REVIEW

Plaintiffs submit that the District Court's determination that it had authority to void the General Release Agreements – as well as its decision to void those agreements – are legal determinations regarding the Court's own authority that should be subject to *de novo* review. *Cf. e.g., Gupta v. McGahey*, 709 F.3d 1062, 1064-65 (11th Cir. 2013) ("We review de novo a district court's determination of whether it has subject-matter jurisdiction."); *cf. also, e.g., United Egg Producers v. Standard Brands, Inc.*, 44 F.3d 940, 942 (11th Cir. 1995) (reviewing *de novo* district court's legal conclusion that enforcing a settlement stipulation would be unlawful).

Plaintiffs submit that the abuse of discretion standard often applied to appellate review of district courts' reviews of FLSA settlement agreements is not appropriate here, as Plaintiffs have not appealed *any* of the District Court's findings with respect to the FLSA Settlement in this case. Rather, because the District Court found that the Parties' FLSA Settlement was a fair and reasonable resolution of a *bona fide* dispute under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), Plaintiffs submit that the District Court lacked authority to then reach beyond the FLSA Settlement and void the separately negotiated General Release Agreements (which the Court had already determined did not affect the fairness or reasonableness of the Parties' FLSA Settlement, and for which the Parties did not seek the Court's approval). As such, the Court's determination of its

18

authority and its voiding of the General Release Agreements should be subject to *de novo* review.

   In any event, even were the Court to apply an abuse of discretion standard, Plaintiffs still submit that reversal is necessary for all of the reasons discussed herein.

## SUMMARY OF THE ARGUMENT

This appeal is limited solely to the District Court's overreach and voiding of the General Release Agreements. As explained herein, the District Court erred both in concluding that it was empowered to void the Parties' private contracts, and in finding that *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020) – a decision that considered neither general release contracts nor the FLSA – had any bearing on the Parties' separately-negotiated contracts.

As described above, the Parties' General Release Agreements were negotiated separately from their FLSA Settlement. The General Release Agreements are supported by separate consideration (*i.e.* are not paid from the common fund) and concern broader releases (both in scope and duration) than those contemplated by the FLSA Settlement. The Parties filed their General Release Agreements as exhibits to their request for approval of their FLSA Settlement in the interest of transparency in connection with the District Court's review of the FLSA Settlement for fairness and reasonableness pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). The Parties did not seek the Court's approval of their separately-negotiated contracts that, but for *Lynn's Food* and Plaintiffs' transparency, would never be subject to judicial review.

Critically, *at no point* did the District Court find that the General Release Agreements had any bearing whatsoever on the fairness or reasonableness of the

FLSA Settlement. Notably, the District Court in this case determined that the FLSA Settlement was fair and reasonable warranting preliminary approval under *Lynn's Food*, and it did so *prior* to even considering the General Release Agreements. (D.E. 110; D.E. 113). And having found the Parties' FLSA Settlement to be a fair and reasonable resolution of a *bona fide* dispute warranting approval, the District Court's role was complete under *Lynn's Food*. Given that the Parties met the standard of law for approval and in the absence of any evidence that called that determination into question, the District Court lacked any authority to then later void the separate and distinct General Release Agreements.

But here, the District Court went beyond the already-approved FLSA Settlement and its prescribed role under *Lynn's Food*, and voided the Parties' separately-negotiated General Release Agreements, finding that the General Release Agreements were "actually incentive payments" prohibited by *Johnson v. NPAS*, 975 F.3d 1244 (11th Cir. 2020). Yet, having found the FLSA Settlement to be fair and reasonable under *Lynn's Food*, the District Court lacked authority to then void General Release Agreements, particularly where, as here, there was *never* a finding that the General Release Agreements had *any* impact on the fairness or reasonableness of the FLSA Settlement whatsoever, or were even part of the District Court's *Lynn's Food* analysis. Indeed, neither *Lynn's Food* nor *NPAS* conferred on the District Court the authority to void private contracts between parties that

indisputably had no bearing on the fairness or reasonableness of the FLSA Settlement.

Moreover, in voiding the General Release Agreements, the Court erroneously determined that the General Release Agreements were not, in fact general release contracts, but were instead "actually incentive payments" prohibited by *NPAS*. In so finding, the Court inappropriately substituted its judgment for that of the contracting Parties and further overreached by imposing an erroneous legal standard for what constitutes "actual" general releases in the first instance (a standard that threatens to undermine general releases in myriad of contexts separate and apart from the instant matter, as companies routinely seek to obtain general releases from people in numerous scenarios, ranging from severance agreements to settlements outside of the FLSA context).

*NPAS* is not relevant to the instant matter. *NPAS* concerned certain "part salary and part bounty" incentive awards drawn from a common settlement fund in a Fed. R. Civ. P. 23 class action settlement that was sought merely on the basis of being the class representative. 975 F.3d at 1258. But here, the General Release Agreements were *separately* negotiated and are supported by *separate* consideration from the underlying FLSA Settlement and concern a *separate* and additional release of claims. *NPAS* did not concern general release contracts, nor did it concern the FLSA. And *NPAS* certainly did not concern the Court's authority to void private

agreements between contracting parties, particularly in this case, where those agreements were found to have no bearing on the fairness or reasonableness of the underlying FLSA Settlement.

For all of these reasons, the District Court's overreach should be reversed.

# **ARGUMENT**

I. **The District Court Erred In Voiding The General Release Agreements After Determining That The Settlement Was A Fair And Reasonable Resolution Of A *Bona Fide* Dispute**

The District Court derived its authority to review the Parties' FLSA Settlement from *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), and the requirement in this Circuit that courts review FLSA settlements for fairness and reasonableness. The Plaintiffs here included the General Release Agreements as exhibits to their request for approval of the Parties' FLSA Settlement *not* because they sought independent approval of those General Release Agreements, but for the sake of transparency in connection with the Court's review of the FLSA Settlement under *Lynn's Food*. (D.E. 118, at 23 n. 11). And here, there was *never* a finding that the General Release Agreements had *any* impact on the fairness or reasonableness of the FLSA Settlement whatsoever. Notably, the District Court determined that the FLSA Settlement was fair and reasonable warranting preliminary approval prior to even considering the General Release Agreements. (D.E. 110; D.E. 113). Having found the FLSA Settlement to be fair and reasonable, the District Court lacked authority to then later void General Release Agreements that had no impact whatsoever on the FLSA Settlement.

What is more, in voiding the General Release Agreements, the District Court imposed an erroneous legal standard on its (already improper) review of the

24

Agreements and ran afoul of its own prior decision and intra-district case law (on which the Parties relied in negotiating the General Release Agreements). The District Court's voiding of the General Release Agreements should be reversed.

### A.    The District Court Was Without Authority To Void The General Release Agreements

Congress enacted the FLSA to remedy "inequalities in bargaining power between employers and employees." *Lynn's Food*, 679 F.2d 1350. To further this congressional purpose, the U.S. Court of Appeals for the Eleventh Circuit has placed "limits on the ability of private parties to settle FLSA lawsuits." *See Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013); *see also Lynn's Food*, 679 F.2d at 1352 (holding that an employee's rights under the FLSA "cannot be abridged by contract or otherwise waived" (internal quotation marks and citation omitted)).

The review of FLSA settlements is therefore a judicially created doctrine in this Circuit unique to the FLSA.[8] The role of judges under this doctrine is limited to

---

[8]    Several federal courts have questioned whether the FLSA even requires court approval of settlements in the first instance. *See, e.g., Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255, 256 n. 10 (5th Cir. 2012) (finding that "payment offered to and accepted by [employees] pursuant to the Settlement Agreement, is an enforceable resolution of those FLSA claims predicated on a *bona fide* dispute about time worked and not as a compromise of guaranteed FLSA substantive rights themselves" and court approval was not required to effectuate release); *Alcantara v. Duran Landscaping, Inc.*, No. 2:21-cv-03947-JDW, 2022 WL 2703610, at *4 (E.D. Pa. Jul. 12, 2022) (examining *Lynn's Food* in individual FLSA settlement and holding that "[i]t's not clear that *Lynn's Food* stands for the broad proposition that this Court and others have given it.").

ensuring that the settlement is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food*, 679 F.2d at 1355.[9]  If the settlement is deemed to be fair – *i.e.* it does not reflect unfair terms that are inherent in the inequalities in bargaining power between employers and employees – the Court's role is complete and the settlement should be approved.[10]

---

[9]    *Lynn's Food* involved a Department of Labor investigation and finding that the employer violated the FLSA's provisions. 679 F.2d 1350. Rather than reaching a settlement with the Department of Labor, however, the employer instead approached its employees directly and sought to resolve the back wage claims by offering a relatively small amount of money to be divided among the employees on a *pro rata* basis in exchange for their waivers of their FLSA claims. *Id.* at 1352. The employer then sought a declaratory judgment that it was free from liability under the FLSA in light of this settlement. *Id.*

This Court, however, affirmed the District Court's dismissal of the action "on the grounds that the settlements violated the provisions and policies of the FLSA," *id.* This Court observed, *inter alia*, that "the employees seemed unaware that the Department of Labor had determined that Lynn's owed them back wages under the FLSA, or that they had any rights at all under the statute. There is no evidence that any of the employees consulted an attorney before signing the agreements. Some of the employees who signed the agreement could not speak English." *Id.* at 1354. And this Court concluded: "Other than a section 216(c) payment supervised by the Department of Labor, there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Id.* at 1355.

[10]    *Cf., e.g., Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (establishing that an "attorneys' fee [that] was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel").

Thus, but for the existence of the FLSA collective action settlement in this case, the District Court would have had no judicial authority whatsoever to even view the private General Release Agreements that concern non-FLSA claims. *Cf., e.g., Padilla v. Smith*, 53 F.4th 1303, 1308-09 (11th Cir. 2022) (acknowledging that general releases and releases of non-FLSA claims at issue do not require court approval). And here, the District Court found that the FLSA Settlement was fair and reasonable under *Lynn's Food*, warranting preliminary approval and the dissemination of notice – critically, it made this determination while deferring judgment on the General Release Agreements in light of *NPAS* (such that the FLSA Settlement was determined to be fair and reasonable separate and apart from General Release Agreements – meaning, the General Release Agreements would not affect the fairness or reasonableness of the FLSA Settlement regardless of what the Court decided with respect to those agreements) (D.E. 113). And at no point did either the Magistrate Judge or District Court determine that the General Release Agreements *in any way* affected the fairness or reasonableness of the FLSA Settlement. Indeed, during the hearing on Plaintiffs' Motion for Final Approval, the District Court specifically noted "for the record" that the Magistrate Judge's "report and recommendation appropriately categorizes the settlement and that it's fair and reasonable in every respect" and that the Court would issue a decision at a later time with respect to the General Release Agreements. (Transcript at 24:2-12). And when

27

granting final approval, the District Court noted that the "*only issues*" with the fairness and reasonableness of the FLSA Settlement were two provisions that had since been amended (related to modification and jurisdiction, *see supra* n.4) (D.E. 123, at 3-4).

Because the District Court found that the FLSA Settlement was fair and reasonable under *Lynn's Food*, its limited role was complete, and it lacked further authority to reach out and void the separately-negotiated agreements between private parties, which are separate from the common settlement fund and supported by consideration above and beyond the underlying FLSA Settlement.[11] The Court's voiding of the General Release Agreements – private agreements between contracting parties and which indisputably had no impact on the fairness or

---

[11]    Notably, a court is without the power to "rewrite a contract or interfere with the freedom of contract or substitute [its] judgment for that of the parties thereto …." *Wiand for Valhalla Investment Partners, L.P. v. Rowe*, 2014 WL 12691590, at *3 (M.D. Fla. Jul. 11, 2014) (quoting *Marriott Corp. v. Dasta Construction Co.*, 26 F.3d 1057, 1068 (11th Cir. 1994); *see also Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000) ("Principles governing general contract law apply to interpret settlement agreements"); *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 (11th Cir. 2001) (it is well settled under Florida law, that "when the terms of a voluntary contract are clear and unambiguous, ... the contracting parties are bound by those terms, and a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties" (citations omitted)); 5 Williston on Contracts § 12:3 (4th ed.) ("[P]ublic policy also requires that parties of full age and competent understanding must have the greatest freedom of contracting, and contracts, when entered into freely and voluntarily, must be upheld and enforced by the courts.").

reasonableness of the underlying FLSA Settlement – was an overreach.[12]

Notably, the District Court further erred in erroneously ignoring Plaintiffs' argument that because the Court *already* found that the Settlement was fair and reasonable under *Lynn's Food*, the Court lacked authority to then reach beyond the FLSA Settlement and later void the General Release Agreements. Indeed, the District Court's Order fails to point to *any* authority justifying its overreach.

*First,* rather than meaningfully consider Plaintiffs' argument regarding the limits of the District Court's authority in this regard, the District Court instead noted in footnote that "[w]hile Plaintiffs argue that this Court is limited to a fairness review of the Agreement, which does not include the general releases, the Eleventh Circuit has declined to rule that district courts cannot consider general releases when assessing the fairness of FLSA settlements." (Order, D.E. 123, at 7 n. 2 (citing *Rodrigues v. CNP of Sanctuary, LLC,* 523 F. App'x. 628, 629 (11th Cir. 2013)). But this statement misses the mark. Plaintiffs fully acknowledge that district courts can and should review FLSA settlements for terms that may run afoul of the fairness

---

[12]    Judge Wolson of the United States District Court for the Eastern District of Pennsylvania began his opinion questioning (in the context of an individual FLSA settlement) whether the FLSA requires court approval of a settlement at all with the following statement: "Ronald Reagan described the nine most terrifying words in the English language: 'I'm from the Government, and I'm here to help.' [] As federal judges, we are not immune from the possibility that our "help" will make things worse, not better, for the parties before us." *Alcantara*, 2022 WL 2703610, at *1 (citation omitted).

considerations contemplated by *Lynn's Food*, such as confidentiality, non-disparagement, or no-rehire provisions.

But that is not what happened here. As explained throughout, the District Court found that the FLSA Settlement was fair and reasonable before even considering the General Release Agreements (and at no point did the District Court find that the General Release Agreements in any way affected the FLSA Settlement). And as noted, the General Release Agreements are *separate* from the FLSA Settlement and are supported by *separate* consideration (*i.e.*, not paid from the common settlement fund) and the District Court overstepped its authority when it voided these separate agreements *after* determining that the FLSA Settlement was fair and reasonable. (D.E. 110; D.E. 113; Transcript, at 24:2-12; D.E. 123). Thus, unlike *Rodrigues* where the FLSA Settlement *itself* contained terms that the District Court found to be objectionable (including a general release unsupported by additional consideration), here, the FLSA Settlement contains no such terms and was determined to be fair and reasonable.[13] (D.E. 110; D.E. 113; Transcript, at 24:2-12;

_____

[13]     In *Rodrigues*, the parties entered into FLSA settlements that included clauses that the District Court found objectionable, including "broad confidentiality provisions and expansive waivers of various legal claims." *Rodrigues*, 523 F. App'x 628. The District Court certified its ruling for interlocutory appeal, and on appeal, the defendants in that case asked the Eleventh Circuit to "hold that a district court may not refuse to approve FLSA settlements as unreasonable based on non-monetary terms such as confidentiality provisions and general releases," *id.* at 629, but the Eleventh Circuit declined to exercise jurisdiction, explaining that "the discretion given to district courts in approving settlement agreements counsels

D.E. 123). As such, the District Court's generic observation that courts may review FLSA settlements for general releases did not provide the Court with the authority to void the Parties' separate agreements that had no impact on the fairness or reasonableness of the FLSA Settlement in this case.

*Second,* similarly unavailing is the District Court's statement that "[d]istrict courts have discretion in deciding whether to approve settlement agreements." (Order, D.E. 123 at 7 (citing *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011)). Again, this overbroad statement does not establish the Court's authority to reach beyond the already-approved FLSA Settlement and void the General Release Agreements. Indeed, *Faught* involved a Rule 23 class action settlement agreement where such court approval *is* required – but *Faught* does not stand for the proposition that courts have discretion whether to approve settlement or release agreements *in all instances*. Not every settlement or release agreement requires court approval. Most do not. Every day, individuals enter into agreements

---

against our exercising interlocutory jurisdiction in this case" and "both parties have expressed a continued willingness to settle regardless of the outcome of this appeal," *id.* As an unpublished opinion, *Rodrigues* is not binding, *see* 11th Circuit Rule 36-2, but, in any event, *Rodrigues,* has no relevance to this case, as the FLSA Settlement here was approved as fair and reasonable and does not contain any objectionable terms, and as discussed, the General Release Agreements here were separate from the FLSA Settlement and supported by additional consideration. And further, *Rodrigues* does *not* stand for the proposition that a District Court may void a separately negotiated contract after finding that the contract has no bearing on the fairness of the settlement.

and release certain claims in exchange for monetary consideration – ranging from individual settlement agreements in myriad cases to severance agreements between employers and soon-to-be former employees. *Cf., e.g., Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1124 (11th Cir. 2014) (enforcing severance agreement that "wip[ed] out any backward-looking claims [plaintiff] might have had against her employer"). And absent authority to the contrary, court approval is not required in any of those instances. Thus, the Court's overbroad observation did not vest the Court with the authority to void the General Release Agreements.

*Finally*, while the Court pointed to *NPAS* when reaching beyond the approved FLSA Settlement and voiding the General Release Agreements, *NPAS* likewise does not vest district courts with the authority to void contracts entered into by private parties. *See generally NPAS*, 975 F.3d 1244. Indeed, as described in more detail below, *NPAS* dealt with certain types of "incentive payments" drawn from a common fund in a Rule 23 class action settlement before a district court for approval based on services performed on behalf of the class– the *NPAS* Court irrefutably did not consider the question of a district court's authority to void contracts. *Id.* Nor did *NPAS* concern the precise question here: namely, whether the District Court had authority to void private agreements between parties that were presented with the Parties' FLSA Settlement merely in the interest of transparency, after *already finding* that the FLSA Settlement was fair and reasonable and that the private

agreements did not affect the fairness or reasonableness of the FSLA Settlement. *Id.* The District Court here went out of its way to reach beyond the matter before it and employed an erroneous analysis to conclude that the separate General Release Agreements between private parties were "actually incentive payments" prohibited by *NPAS*, (Order, D.E. 123, at 6). Yet neither *NPAS* or *Lynn's Food* vested the District Court with the authority to make that determination (and, as explained below, this determination is false in any event).

At bottom, it is axiomatic that federal courts are courts of limited jurisdiction, *see, e.g., Mirage Resorts, Inc. v. Quiet Nacelle Corp.*, 206 F.3d 1398, 1400 (11th Cir. 2000). The District Court here derived its authority to even view the General Release Agreements because of *Lynn's Food* and the requirement in this Circuit that courts review FLSA settlements for fairness and reasonableness (and because Plaintiffs included the General Release Agreements as exhibits to their settlement approval papers for the sake of transparency). Having determined that the FLSA Settlement was fair and reasonable (before even considering the General Release Agreements), its role under *Lynn's Food* was complete. The Court then lacked authority to later void General Release Agreements between the parties, particularly where, as here, there was never a finding that the General Release Agreements had *any* impact on the fairness or reasonableness of the FLSA Settlement under *Lynn's Food*.

**B.    The District Court Further Erred By Imposing An Erroneous Legal Standard**

In overreaching and voiding the General Release Agreements that the District Court already found did not affect the fairness or reasonableness of the FLSA Settlement under *Lynn's Food*, the District Court further overstepped its authority by inappropriately substituting its judgment for that of the contracting Parties and imposing an erroneous legal standard for what constitutes "actual" general releases in the first instance (a standard that threatens to undermine general releases in myriad of contexts separate and apart from the instant matter).

Specifically, the District Court explained that it was voiding the General Release Agreements because it determined the General Release Agreement payments are "actually incentive payments" prohibited by *NPAS* (a flawed conclusion, as discussed below), and the General Release Agreements are not "actually" General Release Agreements because "the parties have identified no potential claims Named Plaintiffs may have to release" and because "[w]hile some courts have permitted general releases in exchange for separate consideration, the amount of such consideration is typically much less than seen here." (Order, D.E. 123, at 6, 8). But these requirements for what constitutes an "actual" general release are made of whole cloth and undermine the very purpose of general releases negotiated and contracted between private parties. And they contemplate an untenable standard under which a federal court may step in and substitute its

34

judgment for that of parties contracting for general releases – the imposition of these requirements threatens to upend the ability of parties to enter into general release contracts in *any* setting.

*First*, a requirement that the Parties identify the claims to be released is inconsistent with the very nature of a general release, whereby the releasor has purchased peace from all known *and unknown* claims. This transfer of risk from releasor to releasee, in exchange for consideration, was specifically bargained for in this case and is indeed the very purpose of a general release agreement. *See, e.g.,* 29 Williston on Contracts § 73:4 (4th ed.) ("It is also said that a 'general release,' by its very nature, is designed to settle not only the specific differences between the parties set forth within it, but all claims between the parties of every kind and character, including not only those known at the time of the release's execution, but those unknown at that time, so long as they arose prior to the date of the release"); *see also, e.g., id.* § 73:11 ("The parties to a release may validly agree to release all claims 'known or unknown' or 'disclosed or undisclosed.'"). The Court's imposition of a requirement that parties must articulate the to-be-released legal claims in order to contract for a general release is itself an overreach and threatens to undermine the ability of any contracting parties to contract for general releases.

Importantly, in this particular case, the release of unknown claims is certainly valuable: not only did the Named Plaintiffs agree to release known and unknown

35

claims that they themselves might bring against Amazon and the other Defendants, but they have also waived the ability to participate in myriad matters as a potential class member.[14] The transfer of risk of unknown claims is particularly significant here, where one of the releasors is Amazon – one of the largest companies in the world and whose business is widespread, affecting many aspects of individuals' lives, which, as a consequence, necessarily carries greater potential legal exposure than, for example, a localized business with a smaller footprint.

Moreover, this particular case arose in the context of a workplace dispute – in this context, a release of all known and unknown claims provides something of significant value given the numerous types of issues that can arise from the employer-employee relationship that are not present in other run-of-the-mill cases. (*See, e.g.,* Transcript at 22:3-7 (Amazon's counsel explaining that "from our perspective, there were potential claims that we could come up with as possible claims that we wanted to have a release from")). Requiring that the Named Plaintiffs

---

[14] Amazon regularly confronts claims for alleged violations of labor, employment, antitrust, product liability, and consumer protection laws, among others. *See, e.g., Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431 (2020) (products liability claim), *Pecznick v. Amazon, Inc.*, No. 2:22-cv-00743, 2022 WL 4483123 (W.D. Wash. Sept. 27, 2022) (purported class action alleging violations of state consumer protection law and related claims), *Hoyt v. Amazon, Inc.*, No. 19-cv-218, 2019 WL 1411222 (N.D. Cal. Mar. 28, 2019) (worker misclassification and related claims), and *Vance v. Amazon.com Inc.*, 525 F. Supp. 3d 1301 (W.D. Wash. 2021) (purported class action alleging violations of Illinois's Biometric Information Privacy Act).

articulate the known and unknown claims that they are releasing undermines the very purpose of a general release and is particularly inappropriate in this case given the circumstances and parties at issue.

Further, any requirement that "claims" be disclosed to the District Court begs the question of what constitutes such a "claim" in the first instance and is an unworkable standard. Many individuals have grievances or negative experiences that may or may not develop into legal claims – particularly in a workplace setting, where this case arose. And not all legal claims are ultimately viable for a variety of reasons, which further begs the question of the particularity with which the "claims" must be identified – for example, must the "claim" survive a Fed. R. Civ. P. 12 Motion to Dismiss? Plaintiffs' attorneys receive numerous inquiries relaying employment-related complaints they ultimately do not pursue – do those inquiries constitute "claims"? By requiring that, in order to pass muster and avoid the district court's voiding of the parties' release contracts, parties to a general release must first identify to a district court the known and unknown claims being released for its evaluation, the District Court has imposed an unworkable standard and undermined the very purpose of a general release.

Additionally, a requirement that the released claims be disclosed to the District Court threatens to undermine confidential attorney-client communications and make public the private, privileged attorney-client discussions surrounding the

release contracts as well as any discussions around experiences that could form the basis of a legal claim. As a general matter, and particularly relevant to the employment context in which this litigation arose, individuals discuss a variety of workplace issues with their attorneys, and for strategic or other reasons, attorneys may not pursue all potential issues as legal claims. A requirement that all known and unknown claims be disclosed to the district court threatens to upend confidential attorney-client communications and reveal attorney work product in this regard. *See, e.g., United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990) (explaining that "[t]he purpose of the attorney-client privilege is to encourage open and complete communication between a client and his attorney by eliminating the possibility of subsequent compelled disclosure of their confidential communication").

***Second***, the District Court's imposition of a requirement regarding the amount of consideration given in support of a general release is likewise inappropriate and constitutes an overreach in this case. Specifically, the District Court found that "while some courts have permitted general releases in exchange for such consideration, the amount of such consideration is typically much less than seen here." (Order, D.E. 123 at 8). But in deciding that the amount of consideration in this case was *per se* too much for an "actual" general release, the District Court improperly substituted its judgment for that of the Parties and overstepped its authority.

It is not the role of the District Court to prescribe the value of a general release to the Defendants, which includes Amazon (the releasor and one of the largest companies in the world) or the Named Plaintiffs (the releasees and who are releasing *all* known and unknown claims against Amazon for the time period of the general release, in exchange for a $10,000 payment). *Cf., e.g., Scofield v. Davant*, 218 F.2d 486, 489 (5th Cir. 1955) (finding that "[w] here fair and reasonable minds may differ as to whether the thing furnished was of sufficient substantial value to justify the admission of any partner [in partnership arrangement], the court may not substitute its judgment for that of the contracting parties"). Here, the Parties, represented by sophisticated counsel and employing their own judgment, determined that $10,000 was appropriate consideration for the general releases that Defendants sought. Parties make risk assessments every time they enter into settlement agreements, and as noted above, the vast majority of settlement and release agreements are not subject to any judicial scrutiny. The Court overstepped its authority in this case by overriding the parties' decision-making and determining that $10,000 was *per se* too much.

Moreover, contrary to the District Court's statement that "the amount of [] consideration is typically much less than seen here," the District Court *itself* previously did not void a payment of $10,000 in exchange for a general release – the *same* amount at issue here, *see, e.g., Huff*, 2021 WL 268356, at *4, *report and*

*recommendation adopted*, 2021 WL 268355 (Dalton, J.). And other District Courts have likewise not voided general release agreements supported by similar amounts of consideration. *See, e.g., Garcia* v. *Amazon.com, Inc., et al*, 2023 WL 3190957, at *5 (M.D. Fla. May 1, 2023) (observing that while general release "provision is far broader than the settlement collective members' waivers, Garcia was given a generous amount of consideration (i.e., $10,000) for his release . . . [s]uch renumeration, particularly when coupled with the fact that Garcia is represented by sophisticated counsel, is enough to uphold his waiver here" where, like here, Amazon was one of the releasors in FLSA case involving delivery drivers); *Dozier v. DBI Servs., LLC*, 2021 WL 6061742, at *9 (M.D. Fla. Dec. 22, 2021), *report and recommendation adopted*, ECF No. 132 (M.D. Fla. Jan. 19, 2022) (approving $7,500 payment as separate consideration for a general release). Thus, even setting aside the District Court's erroneous replacement of its own judgment for that of the parties, the District Court's judgment was itself flawed and should not stand.

C.    **The Court's Decision Runs Afoul Of Prior Decisional Authority That The Parties Relied On In Negotiating The General Release Agreements**

Additionally, as explained above, in negotiating the General Release Agreements here, the Parties relied on a prior decision of the District Court as well as other cases within the judicial district. Plaintiffs certainly recognize that the decisions of district courts are not binding precedent; however, the District Court's

about-face in this case undermines the reasonable expectations of litigants in the federal judicial system, who rely on judicial decisions and the consistent development of legal principles.

Indeed, in negating the General Release Agreements, the Parties relied on the District Court's prior ruling in *Huff*, 2021 WL 268356, at \*4, *report and recommendation adopted*, 2021 WL 268355 (Dalton, J.), where the District Court approved a general release to the named plaintiff in the amount of $10,000, adopting the Magistrate Judge's finding that "[w]hile general releases are generally disfavored in FLSA actions, courts have found that parties may enter into a general release for separate consideration." And like the parties in *Huff*, the Parties in this case did not seek separate approval of the non-FLSA release. But, in a sharp departure from its prior practice under the very same circumstances, the Court in this case took the extra step and affirmatively *voided* the General Release Agreements.[15]

---

[15]    In the District Court's grant of preliminary approval to the FLSA Settlement here, the District Court briefly attempted to distinguish its prior decision in *Huff* saying that "the Court did not pass on the fairness of the separate $10,000 payment as it was not before the Court for approval," (D.E. 113, at 5 n. 7); however, this statement is false, as the Parties in this case relied on *Huff* and presented the separately-negotiated contracts in precisely the same manner – *i.e.* not seeking approval. *Compare Huff v. Bobcat*, C.A. No. 6:19-cv-00861 (M.D. Fla.), D.E. No. 108, at 19-20 ("Thus, to the extent it is not necessary, the Parties do not seek separate approval of the Non-FLSA release and they respectfully submit that this does not impact the fairness of the FLSA Settlement Agreement"), *with* (D.E. 102, at 10) ("To the extent it is not necessary, the Parties do not seek separate approval of the Non-FLSA release, and they respectfully submit that this does not impact the fairness of the FLSA Settlement Agreement" (citing *Huff*)).

The District Court's opinion runs counter not only to its own prior decisional authority on which the parties relied, but also to numerous other cases within the judicial district that similarly did not void separate general releases supported by additional consideration.[16] And moreover, as noted below, even following *NPAS*,

---

[16]    *See, e.g., Martinez v. Ambi Paving, LLC*, 2018 WL 5003754, at *3 (M.D. Fla. Oct. 11, 2018) (additional consideration for the release of retaliation claims not pleaded was sufficient), *report and recommendation adopted,* 2018 WL 4963697 (M.D. Fla. Oct. 15, 2018) (Dalton, J.); *O'Neill v. Speedster Services, LLC*, 2018 WL 4956775, at *4 (M.D. Fla. Sept. 11, 2018) (Separate consideration for a general release warranted approval), *report and recommendation adopted*, 2018 WL 4953239 (M.D. Fla. Oct. 12, 2018) (Dalton, J.); *Goodson v. OS Rest. Services, LLC*, 2018 WL 1701985, at *1 (M.D. Fla. Mar. 21, 2018) (additional consideration for release did not undermine fairness of FLSA settlement), *report and recommendation adopted,* 2018 WL 1695406 (M.D. Fla. Apr. 6, 2018) (Dalton, J.); *see also, e.g., Vela v. Sunnygrove Landscape & Irrigation Maint., LLC,* 2018 WL 8576382, at *3-4 (M.D. Fla. Oct. 4, 2018), *report and recommendation adopted*, 2018 WL 8576384, at *1 (M.D. Fla. Nov. 7, 2018) (approving a general release, emphasizing that the parties' briefing specifically explained that "(1) the clauses were specifically bargained for between the parties and (2) the mutual general release was not a condition of their FLSA settlement"); *Sibauste v. Forge Motor Sport, Inc.*, Case No: 6:17-cv-2069-Orl-DCI, Dkt. No. 32, at 2 *n.1 (M.D. Fla. May 17, 2018) (court approved FLSA settlement without "passing judgment on the enforceability of any of the provisions unrelated to the settlement of Plaintiff's FLSA claim, such as the general release and confidentiality provision for which separate consideration was paid."); *Roman v. FSC Clearwater, LLC*, 2017 WL 1552304, at *1, n.1 (M.D. Fla. May 1, 2017) (court declined to express opinion on validity of general release agreement for which additional consideration was paid); *Bell v. James C. Hall, Inc.*, 2016 WL 5339706, at *2 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, 2016 WL 5146318 (M.D. Fla. Sept. 21, 2016) (the court must examine if there was an "independent, valuable consideration in exchange for a general release"); *Buntin v. Square Foot Mgmt. Co., LLC*, 2015 WL 3407866, at *2 (M.D. Fla. May 27, 2015) (noting that general releases "can be permissible" where "plaintiffs receive adequate compensation in addition to the entitled benefits under the FLSA").

district courts have continued to approve general release agreements supported by separate consideration, correctly recognizing that such a contractual arrangement is not implicated by *NPAS*.[17] The District Court's reversal of itself further demonstrates error in this case.

## II. The District Court Erred In Voiding The General Release Agreements For The Additional Reason That The Agreements Do Not Implicate *Johnson v. NPAS*

The District Court found that the General Release Agreements described above are "'incentive payments' prohibited by *Johnson* [*v. NPAS*]." (Order, D.E. 123, at 6). This finding is erroneous and further demonstrates overreach in this case. Indeed, as described throughout, the General Release Agreements were separately negotiated by the Parties, supported by bargained-for consideration, and will be not paid from the settlement fund – in stark contrast to the "incentive payments" at issue in *NPAS*, which were to be paid from the common fund as part of the underlying settlement in that non-FLSA case. And while the District Court brushed off these "factual differences," (Order, D.E. 123, at 7), these dissimilarities are in fact critical and render *NPAS* wholly inapplicable to the present matter.

The District Court's finding that the General Release Agreements are

---

[17]    *See, e.g., Dozier*, 2021 WL 6061742, at *9, *report and recommendation adopted*, ECF No. 132 (M.D. Fla. Jan. 19, 2022); *Broughton v. Payroll Made Easy, Inc.*, 2021 WL 3169135 (M.D. Fla. Jul. 27, 2021). *See also, e.g., Garcia*, 2023 WL 3190957, at *5.

prohibited by *NPAS* is erroneous and should be reversed.

A.    ***NPAS* Concerned Incentive Payments Made From A Common Settlement Fund In A Non-FLSA Matter**

*NPAS* involved a Fed. R. Civ. P. 23 settlement of claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and an objector's challenge to "the district court's approval of a $6,000 "[i]ncentive [p]ayment" to Johnson as the class representative" made from the common settlement fund. *NPAS*, 975 F.3d at 1250, 1255. The *NPAS* Court found that *Trustees v. Greenough*, 105 U.S. 527, 26 L. Ed. 1157 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 5 S. Ct. 387, 28 L. Ed. 915 (1885), "establish limits on the types of awards that attorneys and litigants may recover ***from the fund***" and the *NPAS* Court explained these cases in detail "[b]ecause of their significance to our decision." 975 F.3d at 1256 (emphasis added). The *NPAS* Court ultimately found that *Greenough* and *Pettus* prohibited the "type of incentive award that the district court approved here." *Id.* at 1260 (emphasis added).

Specifically, the *NPAS* Court explained that *Greenough* involved a suit brought by Francis Vose on behalf of himself and other bondholders against trustees of the Internal Improvement Fund of Florida (and others) regarding their "wasting and destroying the fund by selling at nominal prices," *id.* at 1256 (quoting *Greenough*, 105 U.S. at 128-29). The *NPAS* Court explained:

After "[t]he litigation was carried on with great vigor and at much

> expense, ... a large amount of the trust fund was secured and saved."
> [*Greenough*, 105 U.S.] at 529. As a result, "a considerable amount of
> money was realized, and dividends [were] made amongst the
> bondholders, most of whom came in and took the benefit of the
> litigation." *Id.* Vose "bore the whole burden of this litigation" himself,
> and he "advanced most of the expenses which were necessary for the
> purpose of rendering it effective and successful." *Id.* Accordingly, he
> filed a petition seeking "*an allowance out of the fund*" to cover "his
> expenses and services."

*NPAS,* 975 F.3d at 1256 (alterations in original; emphasis added). The *NPAS* Court

explained that a Special Master "recommended that Vose be granted an *award from*

*the fund*" including "what amounted to attorneys' fees and litigation expenses" as

well as "'an allowance to Vose for his personal services and expenditures'—in

particular, 'an allowance of $2,500 a year for ten years of personal services' and

reimbursement for Vose's 'personal expenditures' for 'railroad fares and hotel

bills.'" *NPAS*, 975 F.3d at 1256 (quoting *Greenough*, 105 U.S. at 530) (emphasis

added). On appeal, the United States Supreme Court allowed the payments of

attorneys' fees and litigation expenses from the fund (reasoning, as the *NPAS* Court

explained), "[i]f Vose wasn't compensated *out of the fund* for these expenses, the

Court explained, the other bondholders would be unjustly enriched," *id.* at 1257

(emphasis added), but it disallowed the allowance from the fund for Vose's

"'personal services and private expenses,'" which the Court deemed a "salary" and

found "'neither reason nor authority for its support.'" *Id.* at 1257 (quoting

*Greenough*, 105 U.S. at 537-38).

The *NPAS* Court explained further that *Pettus*, decided three years later[18], provided a "reiteration of the dichotomy drawn in *Greenough*: While a class representative's claim for 'the expenses incurred in carrying on the suit and reclaiming the property subject to the trust' is proper, his '*claim to be compensated, out of the fund or property recovered*, for his personal services and private expenses" is "unsupported by reason or authority.'" *Id.* (quoting *Pettus*, 113 U.S. at 122) (emphasis added). The *NPAS* Court thereafter proclaimed "[w]e take the rule of *Greenough*, confirmed by *Pettus*, to be fairly clear: A plaintiff suing on behalf of a class can be reimbursed for attorneys' fees and expenses incurred in carrying on the litigation, but he cannot be paid a salary or be reimbursed for his personal expenses." *Id.*

And applying the *NPAS* Court's stated rule to the $6,000 incentive award to be paid from the common fund in the underlying case, the *NPAS* Court explained that "the modern-day incentive award for a class representative is roughly analogous to a salary—in *Greenough*'s terms, payment for "personal services," *id.*, stating that these kinds of "[i]ncentive awards are intended not only to compensate class

---

[18]    The *NPAS* Court explained that *Pettus* was "'the first Supreme Court case recognizing that attorneys'—as distinct from the lead plaintiff —'had a claim to fees payable out of a common fund which has been created through their efforts,' and noted that, in *Pettus*, 'a fee was awarded based upon a percentage of the fund recovered for the class.'" *NPAS*, 957 F.3d at 1257 (quoting *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991)).

representatives for their time (*i.e.*, as a salary), but also to promote litigation by providing a prize to be won (*i.e.*, as a bounty)," *id.* at 1258. The *NPAS* Court then struck the $6,000 incentive award drawn from the common fund, explaining that "[t]he incentive award that Johnson seeks, it seems to us, is part salary and part bounty," *id.* at 1258.

### B.    *NPAS* Is Plainly Inapplicable To The General Release Agreements

*NPAS*, *Greenough*, and *Pettus* are not applicable to the General Release Agreements. The general release payments are not "incentive awards" drawn from the common settlement fund for other members of the FLSA collective; rather, the payments here involve separate agreements for general releases in exchange for bargained for consideration. Contrary to the District Court's erroneous conclusion, these differences are critical and render *NPAS* wholly irrelevant, as other courts have concluded.[19] The District Court's grafting of *NPAS* onto the General Release

---

[19]    *See, e.g., Dozier*, 2021 WL 6061742, at *9, *report and recommendation adopted,* ECF No. 132 (M.D. Fla. Jan. 19, 2022) (approving FLSA collective action and holding "[a]lthough service awards have been rejected in this district in light of *Johnson*, or withheld until *Johnson* is more settled, here, the $7,500 payment to Plaintiff Dozier also represents separate consideration for a general release, which the undersigned recommends does not render the Settlement Agreement unenforceable and provides the Court with a separate basis for approval of the payment."); *Broughton*, 2021 WL 3169135, at *4 n.5 (approving a FCRA class action settlement under which a named plaintiff would receive $5,000 "as consideration for his agreement to execute a general release and a Supplemental Settlement Agreement," and distinguishing such payment from the type of "incentive or service awards" at issue in *Johnson*).

Agreements further demonstrates the District Court's overreach.

      1.    **The General Release Agreements Are Separate Contracts Supported By Separate Consideration Not Drawn From The Settlement Fund**

*NPAS* concerned an incentive payment allowance from the common settlement fund as compensation for the named plaintiff's "personal services" and which the Court prohibited as "a salary, bounty, or both," 975 F.3d at 1258; by contrast, the General Release Agreements here were negotiated separately from the FLSA Settlement and are supported by separate consideration in exchange for the Named Plaintiffs' general release of claims, and are not underwritten by funds that would otherwise go to members of the FLSA collective. These are critical distinctions between the incentive payments in *NPAS* and the General Release Agreements, and the District Court erred by refusing to meaningfully consider the distinction. Instead, the Court made the sweeping and erroneous conclusion that "the *[NPAS]* Court spent little time on the question of where the money came from or how it was negotiated," (Order, D.E. 123, at 7). But this conclusion is false and, moreover, these distinctions are significant.

As an initial matter, contrary to the District Court's conclusion, it is irrefutable that the *NPAS* panel was specifically concerned with allowances from a common fund that would otherwise go to absent class members – indeed, the *NPAS* Court framed its entire analysis by pointing to *Greenough* and *Pettus*, which the Court

explained "establish limits on the types of awards that attorneys and litigants ***may recover from the fund.***" 975 F.3d at 1256 (emphasis added). The *NPAS* Court then proceeded to detail *Greenough* and *Pettus* because of their "significance to our decision" to disallow the proposed incentive award drawn from the common fund. *See generally id.* And as described above, the *NPAS* Court found that the "dichotomy drawn" in *Greenough* – and on which the *NPAS* Court relied in striking the incentive payment that were based exclusively on the named plaintiff's role as the class representative– was that "[w]hile a class representative's claim for 'the expenses incurred in carrying on the suit and reclaiming the property subject to the trust' is proper, his 'claim to be compensated, ***out of the fund or property recovered***, for his personal services and private expenses' is 'unsupported by reason or authority.'" *NPAS*, 975 F.3d at 1257 (quoting *Pettus*, 113 U.S. at 122, 5 S. Ct. 387). Relying exclusively on *Greenough* and *Pettus*, the *NPAS* Court then prohibited the proposed incentive payment drawn from the common fund in that case: "we hold that *Greenough* and *Pettus* prohibit ***the type of incentive award that the district court approved here***—one that compensates a class representative for his time and rewards him for bringing a lawsuit," *id.* at 1260. Thus, at the outset, the District Court's reading of *NPAS* to have little regard for "where the money came from or how it was negotiated for," (Order, D.E. 123, at 7), is wrong, as is the District Court's application of *NPAS* to this case that does not involve "salary" or "bounty" payments

49

drawn from a common settlement fund.

Indeed, the "type" of payment at issue in *NPAS* was *not* the type of payment made pursuant to the General Release Agreements that were separately negotiated and executed by the Parties in this case. The General Release Agreements do not involve an allowance from the FLSA Settlement fund in any respect. The consideration supporting the General Release Agreements is *separate* from the FLSA Settlement fund and secures relief that is otherwise unavailable in the context of an FLSA settlement unless supported by additional consideration, as done here. And as a practical matter, the consideration is currently sitting in the District Court's Registry pending the instant appeal (D.E. 127) – should the Court ultimately affirm the District Court's Order, the consideration will be returned to the Defendants. The consideration has no bearing whatsoever on the amount paid to the Settlement Collective Members, and as noted above, the FLSA Settlement fund has *already* been distributed to Settlement Collective Members. Thus, in stark contrast to *NPAS*, *Greenough*, and *Pettus*, which concerned "limits on the types of awards that attorneys and litigants may recover from the fund," 975 F.3d at 1256, the General Release Agreements do not deplete the funds that opt-in plaintiffs would receive from the FLSA Settlement (which, as described at length above, was *already* found to be a fair and reasonable under *Lynn's Food*, separate and apart from the General Release Agreements).

50

And moreover, the payments here are not for "personal services" like the payments at issue in *NPAS* or *Greenough* – rather, as explained throughout, the Named Plaintiffs in this case have contracted with Defendants to provide Defendants with a broad release of claims in exchange for $10,000. Unlike the plaintiffs in *NPAS* and *Greenough* who the *NPAS* Court described as seeking a "personal service" allowance from the common fund, the Named Plaintiffs in this case have entered into separate contracts by which they are releasing claims separate and apart from those released in the underlying settlement. Indeed, while the releases provided by the FLSA Settlement Collective Members is limited to the time period between March 1, 2017, and June 22, 2019, the General Release Agreements contemplate a release to the execution of the Agreements in December 2021, an additional two and a half years. (*Compare* D.E. 101-2, at ¶11(m) *with* D.E. 101-4). Here, the Parties have contracted to *give up* something of value (a general release) *in exchange* for consideration (a $10,000 payment) – nothing about *NPAS, Greenough*, or *Pettus* prohibit or even speak to the rights of private parties to contract in this manner. And those cases certainly do not provide the District Court with the authority to void the private agreements between the parties.

Further, for these same reasons, the Court's statement that the "larger-than-typical payments only offered to Named Plaintiffs are the type of preferred treatment that the *Johnson* decision seeks to avoid" is likewise misplaced. (Order, D.E. 123, at

51

8). As noted, while *NPAS* concerned "salary or bounty" payments from the common settlement fund, here, the payments to the Named Plaintiffs (offered in exchange for a release of claims separate and apart from their release in connection with the FLSA Settlement) are *separate* from the common fund. Indeed, the common settlement fund has already been distributed to the Settlement Collective Members, and should the Court affirm the District Court's voiding of the General Release Agreements, the monies will return to Defendants. And, at bottom, it is not "preferred treatment" when the Named Plaintiffs have affirmatively contracted to *give up more* – both in terms of the scope and duration of the releases provided – than the Settlement Collective Members.

The District Court failed to appreciate the vastly different circumstances presented by this case, and instead grafted a misreading of *NPAS* onto this matter.

> ## 2.  *NPAS* Did Not Involve An FLSA Settlement And The General Releases Could Not Have Been Provided In The FLSA Settlement

The Court further erred by failing to even consider Plaintiffs' arguments that *NPAS* – which arose in the context of a Fed. R. Civ. P. 23 settlement of claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 – should not be readily extended onto an FLSA Settlement accompanied by *separate* general release agreements such as this one. *NPAS* did not involve a FLSA collective action brought pursuant to 29 U.S.C. § 216(b); it involved a TCPA class action brought pursuant to

Fed. R. Civ. P. 23, and the *NPAS* opinion itself acknowledges that it could be overturned by amendment to **Rule 23**. *Id.* at 1260; *see also Genesis Healthcare Corp. v. Symczyk*, 568 U.S. 66, 133 S. Ct. 1523, 1525 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016) (noting that FLSA and Rule 23 actions are "fundamentally different creatures").

And relevant here, as described throughout, parties are prohibited from agreeing to general releases as part of the settlement of FLSA claims. As such, in order to provide Defendants with the release they sought from the Named Plaintiffs, the parties entered into the separate General Release Agreements, supported by separate consideration. Thus, while the District Court suggested that the General Release Agreements were entered into "solely to create a workaround of the [*NPAS*] prohibition," (Order, D.E. 123, at 7), the Defendants could not have obtained this same consideration as part of the FLSA Settlement – in other words, were the parties to have negotiated general releases in the FLSA settlement *without* separate consideration, those releases would have been stricken as overbroad. Indeed, as the District Court's Order later recognizes and as described above, both prior to and following *NPAS*, district courts in the Eleventh Circuit have continued to allow general release agreements to accompany FLSA settlements if those releases are supported by separate consideration.

53

For all of these reasons, the District Court erred in grafting *NPAS* onto these separately negotiated contracts and voiding those agreements.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should reverse the District Court's Order

voiding the General Release Agreements.

Respectfully submitted this 19th day of May, 2023.

**LICHTEN & LISS-RIORDAN, P.C.**

**BY: /S/ KRYSTEN CONNON**
Sarah R. Schalman-Bergen
Krysten Connon
729 Boylston St, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
ssb@llrlaw.com
kconnon@llrlaw.com

**VARNELL & WARWICK, P.A.**
JANET R. VARNELL, FBN: 0071072
1101 E. Cumberland Ave., Ste. 201H, #105
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*jvarnell@vandwlaw.com*

**WILLIG, WILLIAMS & DAVIDSON**
Ryan Hancock
rhancock@wwdlaw.com
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103

**BERGER MONTAGUE P.C.**
Michaela L. Wallin
mwallin@bm.net
1818 Market Street, Suite 3600
Philadelphia, PA 19103

***Attorneys for Plaintiffs-Appellants***

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

1.　This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 12,996 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.　This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman, 14-point.

Dated: May 19, 2023

**LICHTEN & LISS-RIORDAN P.C.**

**By: <u>/s/ Krysten Connon</u>**
Sarah R. Schalman-Bergen
Krysten Connon
729 Boylston St, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
ssb@llrlaw.com
kconnon@llrlaw.com

56

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on May 19, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished using the appellate CM/ECF system.

Dated: May 19, 2023              **LICHTEN & LISS-RIORDAN P.C.**

**By: /s/ Krysten Connon**
Sarah R. Schalman-Bergen
Krysten Connon
729 Boylston St, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
ssb@llrlaw.com
kconnon@llrlaw.com