No. 22-14191-H

---

**UNITED STATE COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

ANDREA THOMAS, et al,
on behalf of herself and others similarly situated,

*Plaintiffs-Appellants*,

v.

JSTC, LLC, et al,

*Defendants-Appellees*

---

On Partial Appeal from the United States District Court for the
Middle District of Florida
Civ. No. 6:19-cv-1528

---

**BRIEF OF *AMICUS CURIAE* THE RESTAURANT LAW CENTER
IN SUPPORT OF APPELLANT'S PETITION FOR PARTIAL REVERSAL**

Angelo L. Amador
**RESTAURANT LAW CENTER**
2055 L Street, NW, 7th Floor
Washington, DC 20036
(202) 492-5037
aamador@restaurant.org

Eric R. Magnus
*Counsel of Record*
**JACKSON LEWIS P.C.**
171 17th Street, NW Suite 1200
Atlanta, GA 30363
Tel: (404) 586-1820
eric.magnus@jacksonlewis.com
David R. Golder
**JACKSON LEWIS P.C.**
90 Statehouse Square, 8th Floor
Hartford, CT  06103
Tel: (860) 522-0404
david.golder@jacksonlewis.com

*Counsel for Amicus Curiae The Restaurant Law Center*

<u>**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, *amicus curiae* Restaurant Law Center hereby certifies that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

Pursuant to Eleventh Circuit Rule 26.1-2(b), *amicus curiae* here certify that, to the best of their knowledge, the CIP contained in Plaintiff-Appellant's brief is complete except for the following:

- Amador, Angelo I.—Counsel for *amicus curiae* Restaurant Law Center
- Restaurant Law Center *Amicus Curiae*

No publicly traded corporation has an interest in the outcome of the case or appeal.

Dated: May 26, 2023

/s/ *Eric R. Magnus*
Eric R. Magnus
**JACKSON LEWIS P.C.**
171 17th Street, NW Suite 1200
Atlanta, GA 30363
(404) 586-1820
eric.magnus@jacksonlewis.com
David R. Golder
90 Statehouse Square, 8th Floor
Hartford, CT  06103
Tel: (860) 522-0404
david.golder@jacksonlewis.com

*Counsel for Amicus Curiae Restaurant Law Center*

C-1

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................... C-1

TABLE OF CONTENTS ........................................................... i

TABLE OF AUTHORITIES .................................................... iii

STATEMENT REGARDING CONSENT ............................................. 1

INTEREST OF AMICUS CURIAE .............................................. 1

STATEMENT OF THE ISSUES ................................................ 2

SUMMARY OF ARGUMENT .................................................... 2

ARGUMENT .............................................................. 4

    I.    INTRODUCTION ................................................... 4

    II.    THE DISTRICT COURT ERRED IN FINDING THE MONETARY CONSIDERATION PROVIDED TO THE NAMED PLAINTIFFS UNDER THEIR STANDALONE RELEASE AGREEEMENTS WERE SERVICE AWARDS UNDER *JOHNSON* ............................................... 6

        A.    The monetary consideration provided to named plaintiffs did not come from the collective action settlement's common fund. ............................................ 6

        B.    The release agreements were not the kind of "preferred treatment" disfavored in *Johnson*. ........................ 7

        C.    The monetary consideration provided to named plaintiffs was given as payment for a broad release of employment claims ................................................ 9

III.    EVEN ASSUMING THE PAYMENTS WERE SERVICE AWARDS, THE DISTRICT COURT ERRED IN EXTENDING THE BAR ON SERVICE AWARDS IN RULE 23 CLASS ACTIONS TO COLLECTIVE ACTIONS UNDER FLSA, SECTION 216(B)...................................................................14

    A.    Service awards are common in class action litigation, further important goals, and this Circuit is the only court that bars them ..........................................................................14

    B.    There is no legal basis for applying the *Johnson* bar on Rule 23 service awards to FLSA collective actions. ................18

V.    CONCLUSION ....................................................................22

CERTIFICATE OF COMPLIANCE.......................................................24

CERTIFICATE OF SERVICE ..............................................................25

# TABLE OF AUTHORITIE

**Page(s)**

## CASES

*Abraham v. St. Croix Renaissance Grp., L.L.L.P.,*
719 F.3d 270 (3d Cir. 2013) ...............................................................21

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
421 U.S. 240, 95 S. Ct. 1612 (1975)....................................................6

*Bradley v. Richmond Sch. Bd.*,
416 U.S. 696, 94 S. Ct. 2006 (1974).....................................................6

*Calderone v. Scott*,
838 F.3d 1101 (11th Cir. 2016) .................................................19, 22

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) .....................................................19, 21

*Clark v. A&L Homecare & Training Ctr., LLC*,
2023 U.S. App. LEXIS 12365, 2023 WL 3559657 (6th Cir. 2023)...................21

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ...........................................................15

*Genesis Healthcare Corp. v. Symczyk*,
568 U.S. 66, 133 S. Ct. 1523 (2013)....................................................19

*Hadix v. Johnson*,
322 F.3d 895 (6th Cir. 2003) ...............................................................8

*\*Johnson v. NPAS Solutions, LLC*,
975 F.3d 1244 (11th Cir. 2020) *en banc reh'g den'd*,
43 F.4th 1138 (11th Cir. 2022) .................................................*passim*

*Kirkpatrick v. J.C. Bradford & Co.*,
827 F.2d 718 (11th Cir. 1987) ...........................................................20

*\*Lynn's Food Stores, Inc. v. United States,*
679 F.2d 1350 (11th Cir. 1982........................................10, 12, 13, 22

iv

*Marriott Corp. v. Dasta Constr. Co.*,
   26 F.3d 1057 (11th Cir. 1994) ............................................................9

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375, 90 S. Ct. 616 (1970).......................................................6

*Moreno v. Regions Bank*,
   729 F. Supp. 2d 1346 (M.D. Fla. 2010).............................................11

*Muransky v. Godiva Chocolatier, Inc.*,
   922 F.3d 1175 (11th Cir. 2019) .........................................................15

*Myricks v. Fed. Reserve Bank of Atlanta*,
   480 F.3d 1036 (11th Cir. 2007) ..................................................10, 13

*O'Brien v. Ed Connelly Enters., Inc.*,
   575 F.3d 567 (6th Cir. 2009) ............................................................19

*Padilla v. Smith*,
   53 F.4th 1303 (11th Cir. 2022) .........................................................12

*Paylor v. Hartford Fire Ins. Co.*,
   748 F.3d 1117 (11th Cir. 2014) ..................................................10, 13

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*,
   779 F.3d 934 (9th Cir. 2015) ............................................................15

*Rodrigues v. CNP of Sanctuary, LLC*,
   523 F. App'x 628 (11th Cir. 2013) ...................................................13

*Rodriguez v. Sony Comput. Ent. Am., LLC*,
   801 F.3d 1045 (9th Cir. 2015) ..........................................................18

*Scofield v. Davant*,
   218 F.2d 486 (5th Cir. 1955) ..............................................................9

*Scott v. Chipotle Mexican Grill, Inc.*,
   954 F.3d 502 (2d. Cir. 2020) ............................................................19

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..........................................................7, 8

iv

*Symczyk v. Genesis HealthCare Corp.,*
  656 F.3d 189 (3d Cir. 2011) ...............................................................18

*Trustees v. Greenough,*
  105 U.S. 527, 26 L. Ed. 1157 (1882)...........................................*passim*

*United States v. Alvarez–Hernandez,*
  478 F.3d 1060 (9th Cir. 2007) .....................................................16, 18

*Vassalle v. Midland Funding LLC,*
  708 F.3d 747 (6th Cir. 2013) ...............................................................8

*Vinnett v. General Electric Co.,*
  271 Fed. Appx. 908 (11th Cir. 2008)..........................................10, 13

## STATUTES

26 U.S.C. § 45s ....................................................................................11

28 U.S.C. §1453(b) ..............................................................................17

*29 U.S.C. § 201 et seq...............................................................*passim*

29 U.S.C. § 623 ....................................................................................10

42 U.S.C. § 2000e-2 .............................................................................10

## RULES

*Fed. R. Civ. P. 23 ........................................................................*passim*

Fed. R. Civ. P. 23(a)(4).........................................................................20

Fed. R. Civ. P. 23(b)(3).........................................................................22

## OTHER AUTHORITIES

Order, D.E. 123 .............................................................................*passim*

H.R. 1115, 108th Cong., 1st Sess. (2003)...........................................17

S. 274, 108th Cong., 1st Sess. (2003) .................................................17

S. 1751, 108th Cong., 1st Sess. (2003) ...............................................17

John G. Harkins, Jr., Federal Rule 23—Early Years,
   39 Ariz. L. Rev. 705 (1997) .................................................................16

James W. Moore et al., Moore's Federal Practice — Civil § 23.25
   (3d ed. 2010) ........................................................................................20

7B Fed. Prac. & Proc. Civ. § 1807 .........................................................18

## STATEMENT REGARDING CONSENT

Plaintiff-Appellant Andrea Thomas consents to the filing of this brief. *Amicus curiae* Restaurant Law Center has filed a motion for leave to file this brief.[1]

## INTEREST OF AMICUS CURIAE

The Restaurant Law Center ("Law Center") is the only independent public policy organization created specifically to represent the interests of the food-service industry in the courts. This labor-intensive industry is comprised of over one million restaurants and other foodservice outlets employing over 15 million people—approximately ten percent of the U.S. workforce, making it the second-largest private-sector employers in the United States. Through regular participation in amicus briefs on behalf of the industry, the Law Center provides courts with the industry's perspective on legal issues significantly impacting its members and highlights the potential impact of pending cases.

This case concerns an issue of great importance to the Law Center and its restaurant members: the ability to settle class and collective actions expediently, fairly, and with a reasonable assurance that the underlying dispute between the parties is fully and finally resolved. The Law Center has an interest in ensuring that

---

[1] No counsel for a party to this case authored this brief, in whole or in part, and no counsel for a party contributed to the cost of this brief's preparation or submission. No persons, other than the amicus Restaurant Law Center and its members, made a monetary contribution to this brief's preparation and submission.

its restaurant members can obtain releases sufficient in scope to ensure they are not targeted by the same plaintiffs with subsequent litigation after arm's length negotiations.

## STATEMENT OF THE ISSUES

1.    Whether the district court erred in finding that the monetary consideration provided to the named plaintiffs pursuant to a general release separately negotiated by experienced counsel amounted to a service award under *Johnson v. NPAS Solutions*.

2.    Whether the district court erred in finding that the bar on service awards to representative plaintiffs in Fed. R. Civ. P. 23 class actions under *Johnson v. NPAS Solutions* applies to service awards to named plaintiffs in Fair Labor Standards Act collective actions.

## SUMMARY OF ARGUMENT

In an opinion that sets it apart from every federal circuit court to have addressed the issue, a panel majority in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020) barred service awards to representative plaintiffs in class action suits brought under Fed. R. Civ. P. 23 ("Rule 23"). Based on *Johnson*, the district court wrongly extended the principle beyond Rule 23 and concluded that service awards are prohibited to named plaintiffs in collective actions brought under

the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA"). The lower court's decision on this issue should be reversed for two reasons.

First, the agreements at issue here were not part of a Rule 23 class or even an FLSA collective action. Instead, they were *standalone* general release agreements negotiated by experienced counsel apart from the collective action settlement. Yet, the lower court invalidated the release agreements, reasoning that the monetary award provided in exchange for the releases amounted to service awards in disguise. Release agreements are near-universal features of settlements resolving employment disputes of various remedial statutes and are regularly enforced by courts. There is nothing unique about the release agreements here and no support, as a matter of law or fact, for the lower court's conclusion that the separate consideration provided to the named plaintiffs in exchange for their broad release of claims is a disfavored "bounty."

Second, even assuming the consideration to the named Plaintiffs was a service award, Rule 23 class actions and FLSA collective actions differ in significant ways that make *Johnson* inapplicable to the instant case. In Rule 23 representative actions, class members typically have little knowledge of, and no active role in, the litigation. In contrast, in FLSA collective actions, individuals must affirmatively opt-in to the case and actively participate as party plaintiffs. Unlike Rule 23 class actions, collective actions do not bind absent class members. Therefore, the due process

concerns that may arise when service awards are granted to representative plaintiffs in Rule 23 class actions are not similarly implicated in collective actions. Thus, there is no basis for extending the holding in *Johnson* to FLSA collective actions.

This Court should grant partial reversal of the district court's ruling. If this Court does not reverse the lower court on this issue, the Eleventh Circuit will be an island on its own. Moreover, if the lower court's decision becomes the law of the Eleventh Circuit, it would add substantial complexity to the resolution of disputes, to the detriment of employees whose backpay or other negotiated relief is unnecessarily delayed, and at great cost to employers, who rely on the certainty that negotiated releases provide.

## **ARGUMENT**

## I. **INTRODUCTION**

The issue before this Court is whether compensation to a named plaintiff in an FLSA collective action in exchange for a general release of claims—pursuant to a standalone agreement negotiated by counsel separately from the collective action settlement—amounts to a Rule 23 class action service award that this Court prohibited in *Johnson*.

The Law Center supports the Appellants' contention that the compensation provided to the named Plaintiffs in this case as consideration for their broad releases is not a service award as defined in *Johnson*. Courts consistently uphold general

releases and recognize the significant value to employers of obtaining broad releases from plaintiffs. It is axiomatic that litigants have the right to enter private contracts to resolve legal disputes fairly and efficiently without undue judicial interference. Plaintiffs and defendants have a common interest in expeditiously resolving various types of employment lawsuits pursuant to remedial statutes, including FLSA lawsuits. Impediments to settlement, judicially imposed or otherwise, raise the costs for both parties specifically and the legal system in general, make it more difficult for defendants to manage ongoing legal risks, delay relief to plaintiffs, and undermine the purposes of the FLSA.

Even assuming, however, the compensation was a service award in this FLSA action, the lower court still should have approved the service award since *Johnson* involved a Rule 23 class action and did not address FLSA collective actions, which are legally distinct. The Eleventh Circuit has never prohibited service awards for lead plaintiffs in FLSA collectives, nor has any other circuit. There is no basis to extend the Rule 23 service award bar in *Johnson* to FLSA collective actions.

## II.    THE DISTRICT COURT ERRED IN FINDING THE MONETARY CONSIDERATION PROVIDED TO THE NAMED PLAINTIFFS UNDER THEIR STANDALONE RELEASE AGREEEMENTS WERE SERVICE AWARDS UNDER *JOHNSON*.

### A.    The monetary consideration provided to named plaintiffs did not come from the collective action settlement's common fund.

This Court in *Johnson* speaks expressly of "common fund cases," not of cases where named plaintiffs receive payments independent of a common settlement fund. *Johnson*, 975 F.3d at 1265. Moreover, the salient point of the U.S. Supreme Court's opinion in *Trustees v. Greenough*, 105 U.S. 527, 26 L. Ed. 1157 (1882), on which *Johnson* is premised, was that the representative plaintiff should not get a larger cut of the "common fund" pie than the rest of the class.

Similarly, the Supreme Court refers to the long-ago precedents on which *Johnson* relies as the "common fund" cases. *See Mills v. Elec. Auto-Lite Co*., 396 U.S. 375, 392, 90 S. Ct. 616, 626, 24 L. Ed. 2d 593, 606 (describing *Greenough* as "the original 'fund' case in this Court"); *Bradley v. Richmond Sch. Bd*., 416 U.S. 696, 94 S. Ct. 2006, 40 L. Ed. 2d 476, 1974 U.S. LEXIS 141 (citing *Greenough* for the origins of the "common fund theory"); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 278, 95 S. Ct. 1612, 1632, 44 L. Ed. 2d 141, 165, 1975 U.S. LEXIS 108, at *55 ("Starting with the early common-fund cases…"). Indeed, in *Greenough* and *Johnson*, that the award came from the common settlement fund in the above cases was the problem.

Putting aside that the settlement in this case did not even *include* a service award provision, the release payments to the named plaintiffs were not drawn from the common fund of the FLSA settlement. Additionally, the standalone releases and payments did not impact the amount the collective members received under the settlement. In other words, the release agreements had *no effect* on other FLSA collective party plaintiffs or the fairness of the FLSA settlement.

Despite this precedent, the district court said it was irrelevant whether the payments for the separate release agreements came from the common settlement fund. Order, D.E. 123, at 7. The lower court's conclusion was error. When, as here, the settlement is not coming from the common fund, the principles of *Greenough* and *Johnson* do not apply.

## B.    The release agreements were not the kind of "preferred treatment" disfavored in *Johnson*.

The lower court also contends that the standalone release agreements were unfair because other members of the collective were not offered the same deal. "The significantly larger-than-typical payments only offered to Named Plaintiffs are the type of preferred treatment that the *Johnson* decision seeks to avoid." (Order, D.E. 123, at 8, citing *Johnson*, 975 F.3d at 1259 n.9). However, the opportunity for named plaintiffs to release claims against the employer in exchange for monetary consideration is *not* the type of preferred treatment that concerned this Court in the cases referenced in *Johnson*. For example, in *Staton v. Boeing Co.*, the Ninth Circuit

7

rejected a larger payout to class representatives *from the settlement fund* (a payout sixteen times greater, on average, than damages to unnamed class members) without "sufficient justification in the record for this differential." 327 F.3d 938, 975-76 (9th Cir. 2003).

Additionally, in *Vassalle v. Midland Funding LLC*, the Sixth Circuit rejected a settlement that exonerated the debts owed by named plaintiffs to the defendant, while the 1.14 million unnamed class members not only did not obtain the same benefit, but the settlement terms "virtually assur[ed]" that the defendant would be entitled to collect on *their* debts. 708 F.3d 747, 755 (6th Cir. 2013). Critically, because the settlement was found unfair on this basis, the Sixth Circuit expressly declined to address the appropriateness of incentive awards as a matter of law, or as proposed to the named plaintiffs in that case. Instead, the appeals court stood on its prior holding that "there may be circumstances where incentive awards are appropriate" while acknowledging that "[o]ther circuits have more explicitly approved of incentive awards." *Vassalle*, 708 F.3d 747, 755-56 (citing *Hadix v. Johnson*, 322 F.3d 895, 897-98 (6th Cir. 2003)).

Moreover, the lower court's conclusion that other party plaintiffs were not similarly invited to negotiate a broad release assumes facts not in evidence: the lower court does not (and cannot) know the details of the privileged discussions between counsel and the other party plaintiffs they represented during settlement

8

negotiations. Nor do we know the myriad factors that the employer defendant considered in evaluating which plaintiffs from whom to seek broad releases.

What *is* evident, however, is that the parties, guided by experienced counsel, bargained for the value of the standalone releases at arm's length, and the lower court, substituting its judgment, vetoed the deals. This was error. "Where fair and reasonable minds may differ as to whether the thing furnished was of sufficient substantial value . . . the court may not substitute its judgment for that of the contracting parties." *Scofield v. Davant*, 218 F.2d 486, 489 (5th Cir. 1955).

### C.   The monetary consideration provided to named plaintiffs was given as payment for a broad release of employment claims.

"It is not the function of the courts to 'rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain.'" *Marriott Corp. v. Dasta Constr. Co.*, 26 F.3d 1057, 1068 (11th Cir. 1994) (citations omitted). Where private, standalone release agreements are the product of arm's length negotiations between experienced counsel, and the consideration paid for those releases does not come from the common settlement fund (and thus, is of no consequence to other party plaintiffs), trial courts reviewing collective action settlements should refrain from scrutinizing these contracts—which do not require the court's approval—and instead defer to the litigants' own informed estimation of the value of particular settlement terms. Restrictions on employers' ability to

9

negotiate such releases alters the settlement equation significantly and undermines the prompt resolution of these disputes.

In support of its decision to interfere with the parties' freedom of contract, the lower court cited its duty to ensure that the FLSA settlement was "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Order, D.E. 123, at 3 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). This was error.

The payments to the named plaintiffs here reflect the broader scope of what was purchased by the defendant: a general release of all known and unknown non-FLSA claims. General releases are commonplace in employment cases involving remedial statutes and this Court regularly enforces such agreements. *See Myricks v. Fed. Rsrv. Bank of Atlanta*, 480 F.3d 1036 (11th Cir. 2007) (affirming summary judgment in an employer's favor on a former employee's discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e-2, where the employee waived such claims in exchange for enhanced retirement benefits); *Vinnett v. Gen. Elec. Co.*, 271 Fed. Appx. 908 (11th Cir. 2008) (affirming summary judgment to employer on a former employee's claims under Title VII and the Age Discrimination in Employment Act, 29 U.S.C.S. § 623, based on a settlement agreement in which he released all employment-related claims); *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117 (11th Cir. 2014) (affirming summary judgment in an

employer's favor on claims under the Family and Medical Leave Act, 26 U.S.C.S. § 45S, where the plaintiff signed a severance agreement waiving such claims).

General release agreements are of significant value to employers. Employers pay to ensure that no further litigation will be brought by plaintiffs after the immediate lawsuit is settled. Employers often pay a premium for a broad, general release of future claims to buy even greater reassurance. Thus, the consideration to the named Plaintiffs was not largesse on the employer's part and certainly not the kind of unfairly preferential "bounty" that the court in *Johnson* sought to prohibit. 975 F.3d at 1258.

Moreover, the payments to the named Plaintiffs conform to the requirement within this circuit that general releases be supported by additional consideration. *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010). Paradoxically, the parties here were *required* to separately negotiate their releases. In the Eleventh Circuit, the employer could not secure the broad releases it desired via the collective action settlement. *See id.* ("Although inconsequential in the typical civil case (for which settlement requires no judicial review), an employer is not entitled to use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA."). In other words, the employer had to provide additional consideration, and

had to do so via separate, standalone instruments. And that is exactly what the employer did here.

Even the lower court here would have to concede that the named plaintiffs could freely have entered into the broad release agreements the lower court voided, absent their role in this collective action. In fact, the lower court would have had no authority to review the release agreements were they not incidental to the FLSA collective action. *Padilla v. Smith*, 53 F.4th 1303, 1308-09 (11th Cir. 2022) (noting that settlement approval was necessary because, "unlike most claims," an FLSA settlement requires court approval pursuant to *Lynn's Food*). Plaintiffs' involvement in this litigation should not foreclose their right to separately contract for a release of future non-wage claims in exchange for monetary consideration.

By voiding the standalone general release agreements, the district court far exceeded the scope of its duty under *Lynn's Food*. Nonetheless, after approving the collective action settlement as fair and reasonable (D.E. 113), the district court went beyond the four corners of the collective action settlement to scrutinize the named plaintiffs' separately negotiated general release agreements, grafted those agreements to the collective action settlement, concluded that the $10,000 payments to each of the lead plaintiffs in exchange for their general releases amounted to de facto service awards and thus an improper attempt at a "workaround" of *Johnson*, and voided the release agreements. Order, D.E. 123, at 7.

The Appellants argued below that the court's fairness review should be limited to the proposed collective action settlement itself, and not any independent, peripheral agreements with individual plaintiffs. The court disagreed, pointing out that the Eleventh Circuit has not held that district courts "cannot consider general releases when assessing the fairness of FLSA settlements." (Order, D.E. 123, at 7 n. 2 (citing *Rodrigues v. CNP of Sanctuary, LLC*, 523 F. App'x 628, 629 (11th Cir. 2013).) But the question is not whether release provisions in an FLSA collective action settlement can be reviewed for fairness; the question is whether, when evaluating the collective action settlement, *independent*, separately negotiated release contracts should be within the scope of such review. They should not be.

Presumably (and understandably), the district court's vigilance in policing the general agreements in this case was based on their proximity to the FLSA collective action settlement, and the *Lynn's Food* command that such settlements warrant scrutiny in light of the remedial purpose underlying the FLSA. However, there are myriad statutes that serve equally important remedial goals, the violations of which are fairly and efficiently resolved in private settlement agreements by litigants—including parties with allegedly unequal bargaining power—unencumbered by the need for judicial oversight. *See, e.g.*, *Myricks*, 480 F.3d 1036 (affirming employee's waiver of Title VII claims); *Vinnett*, 271 Fed. Appx. 908 (affirming employee's

13

waiver of Title VII and ADEA claims); *Paylor*, 748 F.3d 1117 (affirming employee's waiver of FMLA claims).

The private release agreements negotiated by the litigants here should be afforded the same deference.

### III. EVEN ASSUMING THE PAYMENTS WERE SERVICE AWARDS, THE DISTRICT COURT ERRED IN EXTENDING THE BAR ON SERVICE AWARDS IN RULE 23 CLASS ACTIONS TO COLLECTIVE ACTIONS UNDER FLSA, SECTION 216(B).

#### A. Service awards are common in class action litigation, further important goals, and this Circuit is the only court that bars them.

Although this Court held in *Johnson* that service awards in Rule 23 class actions are improper, it is worth noting that every federal circuit has approved service awards to lead plaintiffs in class and collective actions in recognition of the role that lead plaintiffs take on in these lengthy, complex litigations.

As this Court is aware, Judge Pryor's dissent from this Court's decision denying *en banc* rehearing of *Johnson* notes that this Court holds the minority view. *Johnson v. NPAS Solutions*, 975 F.3d 1244 (11th Cir. 2020), *en banc reh'g denied*, 43 F.4th 1138, 1150 (11th Cir. 2022) ("The panel majority opinion not only misread *Greenough* [ ], it also created a split among circuits by distinguishing ours as the only circuit to read these cases as barring incentive awards for class action representatives."). Judge Pryor also demonstrated that other circuit courts recognize the importance of service awards in class action litigation. *See id.* at 1146.

("[F]ederal courts have had decades to examine Rule 23's authorization of incentive awards in class action settlements, to evaluate these awards' costs and benefits, and to develop safeguards to prevent them from resulting in unfair settlements."); *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."); *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 943 (9th Cir. 2015) ("[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'") (citation omitted).[2]

In addition, defendants have an interest in maintaining the ability to negotiate service awards to lead plaintiffs in class actions. The decision by employers to enter settlement negotiations is informed by numerous factors, including the judgment that the cost and disruption of further litigation outweighs the benefits of resolving the

---

[2] In 2018, this Court held that *Greenough* posed no impediment to service awards. *See Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1196 (11th Cir. 2019) ("Many circuits have endorsed incentive awards and recognize them as serving the purposes of Rule 23."), *vacated on other grounds on reh'g en banc*, 979 F.3d 917 (11th Cir. 2020). For its part, this Court found: "We do not view granting a monetary award as an incentive to a named class representative[] as categorically improper" and found no abuse of discretion by the district court in granting the incentive award. *Id.*

case. In contributing to the prompt resolution of wage and hour disputes through settlement, service awards help to effectuate the purposes of wage law.

As demonstrated in Judge Pryor's dissent, Congress has never instructed that service awards are improper even though it is well-aware of class action litigation and the use of service awards. *Johnson*, 43 F.4th 1138, 1147-58. "Under the rules of statutory construction, [courts] presume that Congress acts with awareness of relevant judicial decisions." *United States v. Alvarez–Hernandez*, 478 F.3d 1060, 1065 (9th Cir. 2007) (citations and internal quotation marks omitted). Despite our legislature's awareness of *Greenough*'s prohibition on incentive awards, Congress did not codify *Greenough*'s restriction when it constructed the procedural mechanisms for litigating class action disputes. Rule 23, approved by Congress and adopted by the Supreme Court in 1938, does not address the topic of service awards in class actions. Fed. R. Civ. P. 23 (1940).[3] Its amended version, adopted in 1966 and in use today, is likewise silent. *See* Fed. R. Civ. P. 23 (1966).

Since that time, as discussed above, hundreds of Rule 23 class action cases have been litigated and settled in federal courts, with service awards to lead plaintiffs a term of settlement. Again, Congress is presumed to be aware of those cases. Yet, in 2005, the Class Action Fairness Act of 2005 ("CAFA") which aimed to cure

---

[3] John G. Harkins, Jr., Federal Rule 23—The Early Years, 39 Ariz. L. Rev. 705 (1997).

"abuses of the class action device" and to "assure fair and prompt recoveries for class members with legitimate claims," did not bar service awards, restrict service awards, or even speak to service awards. *See* 28 U.S.C. § 1453(b).

Notably, Senate Bill 274, an earlier version of CAFA introduced in the 108th Congress, *did* include a "Prohibition on the payment of bounties." That bill stated: "The court may not approve a proposed settlement that provides for the payment of a greater share of the award to a class representative serving on behalf of a class… than that awarded to the other class members." S. 274, 108th Cong., 1st Sess. (2003). Even here, though, the proposed legislation provided, "The limitation… shall not be construed to prohibit a payment approved by the court for reasonable time or costs that a person was required to expend in fulfilling the obligations of that person as a class representative." Identical, or nearly identical language appeared in S.B. 1751 and H.R. 1115, other versions of the measure introduced in 2003. S. 1751, 108th Cong., 1st Sess. (2003); H.R. 1115, 108th Cong., 1st Sess. (2003). This language is absent from Senate Bill 5, finally enacted as CAFA in the following legislative session. *See* 28 U.S.C. § 1453(b). Thus, in passing its sweeping class action reform law, Congress deliberately chose *not* to codify a restriction on service awards to lead plaintiffs.[4]

---

[4] Congress, however, *did* expressly limit "excessive attorney compensation" and, having found that "unjustified awards are made to certain plaintiffs at the expense of other class members," prohibited settlements that pay more to certain class members based solely on "closer geographic proximity to the court." *See* 28 U.S.C. § 1453(b).

In other words, our legislature was aware of Rule 23 service awards, considered narrowing—although not eliminating—the use of service awards, but ultimately decided to leave the use of service awards untouched in the legislation. *See cf. Alvarez–Hernandez*, 478 F.3d 1060, 1065; *Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045, 1052 (9th Cir. 2015) ("Congress' failure to amend 18 U.S.C. § 2710 provides further support for our conclusion of Congressional intent to limit any private right of action to claims involving unlawful disclosure.").

### B. There is no legal basis for applying the *Johnson* bar on Rule 23 service awards to FLSA collective actions.

"Collective actions and class actions are creatures of distinct texts—collective actions of section 216(b), and class actions of Rule 23—that impose distinct requirements." *Campbell v. City of Los Angeles*, 903 F.3d 1090 at 3 (9th Cir. 2018) (citing 7B Fed. Prac. & Proc. Civ. § 1807). "The 'expedient adoption of Rule 23 terminology with no mooring in the statutory text of § 216(b)' risks 'inject[ing] a measure of confusion into the wider body of FLSA jurisprudence'—and has likely already done so." *Id.* (citing *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 194 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66, 133 S.Ct. 1523, 185 L.Ed.2d 636 (2013)).

Despite the significant legal differences between Rule 23 and FLSA collective actions, the district court—with little analysis or explanation—applied the *Johnson* prohibition on Rule 23 class service awards in this FLSA collective action. Order,

18

D.E. 123. *Johnson*, however, is silent as to whether its rationale applies to collective actions. *Johnson*, 975 F.3d 1244. Notably, there is no precedent in *any* circuit to impose a categorical ban on service awards in FLSA collective actions.

The procedural differences between Rule 23 class actions and FLSA collective actions, and the due process underpinnings of these significant differences, demonstrate why any stated rationale for imposing restrictions on service awards in the Rule 23 context does not apply to FLSA collective actions. *See Genesis Healthcare Corp. v. Symczyk*, 568 U.S. 66, 133 S. Ct. 1523, 1525 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *Campbell*, 903 F.3d 1090 at 3; *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 519 (2d. Cir. 2020) ("The language and structure of § 216(b) and the modern Rule 23… bear little resemblance to each other."). In addition, "Rule 23 and § 216(b) serve fundamentally different purposes." *Scott*, 954 F.3d at 519.

Rule 23 enumerates heightened, more exacting criteria for certification of a class action not present in the collective action regime. *See Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016) (describing Rule 23 as "more demanding" than § 216(b)); *O'Brien v. Ed Connelly Enters., Inc.*, 575 F.3d 567, 584-85 (6th Cir. 2009) (describing Rule 23 as "a more stringent standard" than § 216(b)). This is for good reason: the procedural requirements of Rule 23 class actions are meant to protect the due process rights of absent class members. *Scott*, 954 F.3d at 519. Consequently,

would-be class representatives must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

Pursuant to this adequacy requirement, the class representative acts as a fiduciary for the entire class. "As a fiduciary, the class representative owes the putative class a duty of loyalty" and "any conflict of interest between the named representative and class members would undermine the fiduciary relationship." 5 James W. Moore et al., Moore's Federal Practice — Civil § 23.25 (3d ed. 2010) (footnotes omitted). "[N]amed plaintiffs might not qualify as adequate class representatives because they do not possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987).

In contrast, and by design, named plaintiffs in FLSA collective actions do not represent class members, and the adequacy of representation criteria of Rule 23(a)(4) do not attach. "Congress amended § 216(b) in 1947 expressly to put an end to representational litigation in the context of actions proceeding under § 216(b)[.]" 954 F.3d at 519. Instead, employees must affirmatively opt-in to a collective action by filing a written consent to join the suit. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). "A collective action is more accurately described as a kind of mass

20

action, in which aggrieved workers act as a collective of individual plaintiffs with individual cases . . . without necessarily permitting a specific, named representative to control the litigation . . . ." *Campbell*, 903 F.3d at 1105 (citing *Abraham v. St. Croix Renaissance Grp., L.L.L.P.*, 719 F.3d 270, 272 n.1 (3d Cir. 2013)).

That is, in collective actions, opt-in collective members have knowingly joined the case as party plaintiffs, agree to participate in the case as party plaintiffs, and are represented by counsel. "[I]n contrast to members of a Rule 23 class— similarly situated employees who join an FLSA action become parties with the same status in relation to the claims of the lawsuit as do the named plaintiffs." *Clark v. A&L Homecare & Training Ctr., LLC*, 2023 WL 3559657, at *2 (6th Cir. 2023) (internal quotations and citations omitted). In collective actions, there are no absent class members unaware of the litigation whose interests must therefore be more closely guarded.

Because named plaintiffs in collective actions do not assume the fiduciary role undertaken by representative plaintiffs in Rule 23 class actions, there is no corresponding due process concern over the propriety of service awards relative to classwide recovery. Moreover, any concern that a service award cuts into the common settlement fund (to be clear, this is *not* the case here) is allayed by the fact that only those who have affirmatively opted in to the collective action are impacted; there is no fear of binding absent class members to a settlement that unfairly favors

21

the lead plaintiff. "The FLSA's § 216(b) requires plaintiffs to 'opt in' to be considered class members. In contrast, a Rule 23(b)(3) class action requires plaintiffs to 'opt out' if they do not wish to be bound by the court's judgment." *Calderone*, 838 F.3d 1101, 1102.

The district court failed to account for the significant differences between Rule 23 class actions and FLSA collective actions when it extended *Johnson*'s prohibition on incentive awards to this FLSA collective action.

## IV.  CONCLUSION

This Court should not enlarge courts' oversight role under *Lynn's Food* to impose *Johnson*'s bar on the right of parties to negotiate Rule 23 service awards on FLSA collective actions. Moreover, were this Court to apply the Rule 23 service bar restriction to collective action settlements, it should nonetheless find that separately negotiated general release agreements by counsel are not subject to court scrutiny. Voiding these standalone agreements, independent of the FLSA settlement, interferes unnecessarily with the private litigants' right of contract.

For all these reasons, this Court should grant partial reversal of the district court's ruling.

May 26, 2023

                                                      Respectfully submitted,

                                                      */s/Eric R. Magnus*

Angelo I. Amador                          Eric R. Magnus

**RESTAURANT LAW CENTER**           *Counsel of Record*

2055 L Street, NW, 7th Floor       **JACKSON LEWIS P.C.**

(202) 492-5037                     171 17th Street, NW Suite 1200

aamador@restaurant.org        Atlanta, GA 30363

                                                Tel.: (404) 586-1820

                                                eric.magnus@jacksonlewis.com

                                                David R. Golder

                                                **JACKSON LEWIS P.C.**

                                                90 Statehouse Square, 8th Floor

                                                Hartford, CT  06103

                                                Tel: (860) 522-0404

                                              david.golder@jacksonlewis.com

*Counsel for Amici Curiae Restaurant Law Center*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel for amicus curiae, certifies that the foregoing motion complies with the word limit of Fed. R. App. P. 29(a)(5) and contains 5,123 words according to the word processing program used to prepare it, excluding the parts of the motion exempted by Fed. R. App. P. 32(f). Pursuant to 11th Cir. R. 27-1(a)(10), the brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

Dated: May 26, 2023                By:    /s/ *Eric R. Magnus*
                                                      Eric R. Magnus
                                                      David R. Golder
                                                      **JACKSON LEWIS P.C.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: May 26, 2023    By: /s/ *Eric R. Magnus*
               Eric R. Magnus
               **JACKSON LEWIS P.C.**